In re Hermann C. BURCKARDT and
Carmen Irene Raldiris, Debtors.

Bankruptcy No. B–80–00268 (B).

United States Bankruptcy Court,
D. Puerto Rico.

Nov. 21, 1980.

William A. Power, Sweeting, Pons, González & Rodríguez, San Juan, P. R., for Banco Central & Economias.

Roberto López García, Colorado, Martínez & Odell, Hato Rey, P. R., for Federal Deposit Insurance Corp.

José R. Otero Suro, Otero Suro & Otero Suro, Hato Rey, P. R., for Hermann C. Burckardt and Carmen Irene Raldiris.

### OPINION

W. H. BECKERLEG, Bankruptcy Judge.

The Banco Central y Economías (the "bank") has moved for instructions concerning a 1977 Ford LTD. Present at the hearing on the motion were the debtor, the bank, the FDIC, and the trustee.

The facts as alleged and as offered by counsel at the hearing are uncontroverted and are as follows:

The bank in 1978 obtained a judgment in the local courts against the debtor, and in execution of that judgment proceeded to attach a 1977 Ford LTD property of debtor. The LTD was sold pursuant to the attachment process to a third party.

Prior to the attachment and unknown to the bank, the debtor had obtained a loan from the Banco Crédito y Ahorro Ponceño, and had guaranteed the loan with a chattel mortgage on the LTD. The bank learned of this chattel mortgage subsequent to the sale of the car to the third party, and recognizing that the judicial sale was null and void (for their failure to deposit with the local court the amount guaranteed by the chattel mortgage), the bank proceeded to reimburse the purchase price to the third party and to recover possession of the LTD. The bank presently has this LTD in its possession in Garage Francia in Hato Rey,

P. R., and they recognize that they have no lien nor claim against the vehicle.

The Banco Crédito y Ahorro Ponceño meanwhile failed and the FDIC, as receiver in a non-bankruptcy proceeding, is now the assignee of the chattel mortgage. The amount owed and guaranteed by the chattel mortgage is $10,000. At the time of the attachment in 1978 the LTD had a value of $7,800, but today its value is $4,000. The debtor states he now has no interest in recovering the LTD.

We now turn to the procedural problems presented by this proceeding.

▮ The motion of the bank which initiated these proceedings is entitled "Motion Requesting Instructions as to Certain Debtor's Property"; while the bank's intention is clear—they want advice—the nature and title of their motion faces us with a request that is not readily cataloged as one contemplated by the Bankruptcy Code nor by the Bankruptcy Rules. However, F.R.C.P. 8(f) (incorporated into the Bankruptcy Rules as Rule 708) requires all pleadings to be so construed as to do substantial justice. Substantial justice requires us to construe this motion either as a request for a declaratory judgment or for an advisory opinion.

▮ Declaratory judgments are requested normally through the procedural vehicle of a complaint; Local Interim Bankruptcy Rule 7001 thus designates a proceeding for declaratory judgment under nonbankruptcy law as an adversary proceeding, and this, of course, begins with a complaint. Rule 703.

F.R.C.P. 57, which deals with declaratory judgments, was adopted by the framers of the Bankruptcy Rules neither in whole nor in part. The Advisory Committee's Introductory Note to the Preliminary Draft of the Bankruptcy Rules indicates that the Advisory Committee did not consider a rule for declaratory judgments necessary, but they did state that if declaratory relief should be sought then Rule 914 would apply. Rule 914, of course, deals with contest-

ed matters "not otherwise provided for" by the rules.[1]

Sec. 249 of the Bankruptcy Reform Act of 1978 (28 U.S.C. § 249) extended the Declaratory Judgment Act, 28 U.S.C. § 2201, to proceedings under Secs. 505 and 1146 of Title 11 ( # 505 and # 1146 relate to the determination of tax liability by the Bankruptcy Court, which the present case is not).

The history of the Declaratory Judgment Act indicates that in its second year (1935), it was amended to expressly prohibit declaratory judgments with respect to federal taxes. *6A Moore's Federal Practice # 57.-02(2)*, p. 57–8. As amended, it then read in part:

"(1) In cases of actual controversy except with respect to Federal taxes, the courts of the United States shall have the power . . . to declare the rights and other legal relations of any interested party . . ."

Despite the above quoted language, the authority of the Bankruptcy Courts pursuant to then 64(a)(4) to determine the validity and amount of taxes was practically undisputed, and it was not until 1941 that the Supreme Court limited somewhat this assumed authority in *Arkansas Corporation Commission v. Thompson* (1941) 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244. Congress, in 1966, amended the Bankruptcy Act by adding to Sec. 2, which set forth the Bankruptcy Court's jurisdiction, a new section denominated 2(a)(2A) giving expressly to the Bankruptcy Court jurisdiction to

"Hear and determine . . . any question arising as to the amount or legality of any unpaid tax . . ."

The action of the courts prior to the *Arkansas Corporation* case, *supra*, and of Congress after the case, and of the Supreme Court itself in the case is clear support for the broad theory that Bankruptcy Courts have long had ample jurisdiction, at least in tax matters, to entertain declaratory judgment actions; the action of Congress in 1978 in specifically including # 505 and # 1146 cases within the scope of the Declaratory Judgment Act confirms this, or at least now removes it from doubt.

■ Despite the absence of a specific Bankruptcy Rule dealing with declaratory judgments, and the confusion between the Interim Rules and the earlier Bankruptcy Rules as to whether requests for declaratory judgments are adversary proceedings or contested matters, the existence of a right to declaratory judgment type relief in a Bankruptcy Court is clear today.

May we also conclude, that there also exists in the Bankruptcy Court a right to an advisory opinion?

Courts have been reluctant to give advisory opinions, *Alabama Federation of Labor v. McAdony* (1945) 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725, and the classical argument against advisory opinions is that the hypothetical or abstract question presented by a request for an advisory opinion is not a justiciable controversy, and thus not a "case or controversy" within the meaning of Article III of the Constitution. *Aetna Life Ins. Co. v. Haworth*, (1937) 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617.[2]

■ We are not, of course, a Title III Court; we are a Title I Court, and Congress has spelled out our jurisdiction in 28 U.S.C. § 1471 as extensive to "all cases under title 11" and to "all civil proceedings arising under title 11." We are not restricted, as are the Title III courts to a constitutional limitation of "cases" and "controversies"; our limitation is to cases and proceedings.

■ The Senate Report on the Bankruptcy Reform Act of 1978 (S.R. 95–989, U.S. Code Cong. & Admin.News, 1978, p. 5787) on p. 216 indicates that in defining the

---

1. By the language or Rule 914, Rule 708 would not apply to contested matters, but we do not believe anyone will argue that the principle of FRCP 8(f) to construe pleadings so as to do substantial justice is not of equal importance in a contested matter as in an adversary proceeding.

2. Requests for declaratory judgments have been held to be "cases or controversies." *Nashville, Chattanooga & St. Louis Ry. Co. v. Wallace* (1933) 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730.

jurisdiction of the Bankruptcy Court Congress intended the "proceedings" to be liberally interpreted.

> "Thus, proceedings here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under the current bankruptcy law. It also includes and (sic) disputes related to administrative matters in a bankruptcy case. Likewise, the term proceeding includes issues which may arise after a case is closed, such as in a controversy over a reaffirmation agreement under Section 524(b) of Title I of the bill."

We do not read the above language as extensive to requests for advisory opinions. While Congress could grant a legislative or Article I court power to enter advisory opinions,[3] the above quoted language from the Senate Report would not indicate that they have done so. Until they do so, we should not enter advisory opinions but limit our opinions to proceedings where there is a controversy, a dispute, and parties with adverse interests.

█ If we will not entertain the present motion as a request for an advisory opinion, would it be proper to dismiss it because it is not in the form of a complaint. We think not. All of the parties are before us, there is now no controversy as to the facts and the only effect of requiring the bank to start over with a complaint would be to postpone the date on which this Court would be in condition to rule on the matter—a condition which it finds itself in today just as effectively as if the parties had proceeded through the full adversary procedure route. Proper pleading is important, but its importance consists in its effectiveness as a means to accomplish the ends of a just judgment. *Maty v. Grasselli Chemical Co.* (1938) 303 U.S. 197, 58 S.Ct. 507, 82 L.Ed. 745. Construing this motion as a complaint or a contested matter, in the light of this particular case and the general agreement of the parties, in no way detracts from any party's right to a fair trial and, on the contrary, provides an answer

now to a question for which all of the parties require an answer for the normal administration of this estate.

█ The case at bar is no longer complicated; the debtor has no interest in the vehicle; the trustee has no interest; the bank has no interest; and it is apparent that only the FDIC would benefit from its sale. Insofar, as the debtor and the trustee are concerned they have abandoned the property. To comply with the requirements of Sec. 554, the Clerk of this Court shall send copy of this opinion to all parties in interest with a notice that the vehicle shall be considered abandoned if no written opposition is received within 10 days of the notice; upon expiration of the 10 day term, the Clerk of the Court shall enter judgment in accordance with this order including relief from the automatic stay in favor of the FDIC.

---

**3.** See *1 Moore's Federal Practice*, 2nd Ed., # 0.4(1), 0.4(4).