In re Arve KILEN, Debtor.

Arve KILEN, Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 87 B 7567.
Adv. No. 89 A 1038.

United States Bankruptcy Court, N.D. Illinois, E.D.

June 28, 1991.

Allan G. Sweig, Benjamin D. Schwartz, Michael M. Eidelman, Altheimer & Gray, Chicago, Ill., for plaintiff.

Eugene J. Rossi, U.S. Dept. of Justice, Tax Div., Washington, D.C., Luanne Di-Mauro, Sp. Asst. U.S. Atty., Chicago, Ill., for defendant.

### MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter comes before the Court on the United States' motion for partial dismissal of the debtor's complaint seeking a determination of his liability, if any, to the Internal Revenue Service under § 505(a) of the Bankruptcy Code. For the reasons stated below, the United States' motion is denied.

### FACTS

The unusual facts of this Chapter 11 case give rise to a dispute that raises some fundamental questions about the nature and role of the bankruptcy court. Arve Kilen filed an individual Chapter 11 petition on November 25, 1987. Kilen was an owner, director or officer of 31 corporations, each of which filed its own bankruptcy petition. As such Kilen had and may still have a serious problem with potential personal liability under § 6672 of the Internal Revenue Code for trust fund taxes which

these corporations may have failed to pay.[1] Several of the corporations listed trust fund tax liabilities on their bankruptcy schedules. Others may not have paid the required employment taxes but failed to schedule those debts. The potential for liability for the withholding taxes owed by the corporate debtor arguably became Kilen's most significant financial problem.

Accordingly when Kilen drafted his Chapter 11 plan, he paid close attention to his potential personal liability for trust fund taxes that any of these corporations may have failed to pay. Kilen got a Chapter 11 plan confirmed in his individual case that set aside a large pot of money, some $640,000, to satisfy debts owed to various tax collectors including the IRS. However, for reasons best known to itself, the IRS has shown little interest in pursuing its rights against that fund. With few exceptions, it took no steps to determine the amount of withholding taxes owed by the corporations. It filed a proof of claim in Kilen's case for the unpaid withholding taxes of only one of the corporate debtors. As to the rest, the IRS seems to take the attitude that when it gets around to it, it will determine how much each corporation owes. If the corporation fails to pay (as will likely be the case since almost all of the corporate Chapter 11 cases have failed and will produce little or no dividend to even priority creditors), the IRS will look to Kilen to pay the taxes personally under § 6672 of the Internal Revenue Code (IRC).[2] Any obligation that Kilen has in this regard will not be covered by his Chapter 11 discharge. *See* 11 U.S.C. §§ 523(a)(1), 1141(d). Thus, even if the IRS

doesn't pursue its § 6672 claims against the $640,000 fund provided by Kilen's plan, it can still pursue the claims against Kilen personally.[3]

From Kilen's point of view, the IRS's approach would be a disaster. If the IRS and other tax collectors fail to succeed in asserting priority claims totalling at least $640,000 as provided by the plan, the remaining portion of the fund goes to Kilen's nonpriority unsecured creditors.[4] Kilen would wind up with the worst of all results from his perspective: the money to pay the taxes would be gone, and he would still be personally liable for the taxes. To prevent this from happening Kilen filed claims on behalf of the United States in his own case for any and all personal liability he may have for unpaid corporate withholding taxes. *See* 11 U.S.C. § 501(c), Bankruptcy Rule 3004.

Kilen then filed this adversary complaint objecting to the claims filed by the United States and seeking entry of a declaratory judgment pursuant to § 505(a) of the Bankruptcy Code either declaring the amount of his liability under that provision or declaring that Kilen owes the government nothing under § 6672 because the corporations owe nothing or because Kilen was not a responsible person for any corporation that failed to pay over trust fund money. The premise behind Kilen's complaint is that his "fresh start" from bankruptcy will be jeopardized if his liability for trust fund taxes is not determined by this Court so that the monies due the IRS for § 6672 claims against Kilen can be paid within the context of his Chapter 11 plan.

The United States brought the instant motion pursuant to Fed.R.Civ.P. 12(b),

---

1. Section 6672 imposes liability on "[a]ny person required to collect, truthfully account for, and pay over" trust fund taxes who willfully fails to do so. 26 U.S.C. § 6672. Trust fund taxes are funds withheld from employees' pay checks for personal income taxes and social security taxes. Kilen does not concede that he is a responsible person for § 6672 purposes.

2. Although the term trust fund tax is used throughout this opinion to describe Kilen's potential liability to the IRS, what he would, in fact, be liable for as a responsible person is a *penalty* equal to the amount of the unpaid tax, rather than the tax itself. *See* 26 U.S.C. § 6672.

3. The other tax collectors have not been nearly as recalcitrant as the IRS. Kilen has resolved his disputes with most of the state and local tax collectors asserting claims against him. The few remaining disputes that he has with a taxing body other than the IRS, specifically the Illinois Department of Revenue, appear close to resolution.

4. Of course, any claims the IRS has against Kilen under § 6672 of the IRC are priority claims. *See* 11 U.S.C. § 507(a)(7)(C).

seeking partial dismissal of Kilen's complaint as it relates to twenty-nine of the taxpayer corporations. The United States argues that since the IRS has not assessed nor proposed to assess penalties for tax deficiencies against Kilen for these corporations, there is no existing case or controversy for this Court to resolve. Thus, as the IRS sees it this Court lacks subject matter jurisdiction over any dispute Kilen might think he has with the IRS relating to any unpaid withholding taxes that the twenty-nine corporations might owe.[5]

## JURISDICTION

The Court has jurisdiction over this motion to dismiss under 28 U.S.C. § 1334 as a proceeding arising under §§ 501(c), 502(b), and 505(a) of the Bankruptcy Code. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (C) and is before the Court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois referring bankruptcy cases and proceedings to this Court for hearing and determination.

## DISCUSSION

Section 505 of the Bankruptcy Code provides:

> (1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

11 U.S.C. § 505(a).

Despite this broad language, the IRS objects to the bankruptcy court's jurisdiction to determine the total amount of Kilen's employment tax liability on the grounds that no withholding tax deficiency has been assessed nor is proposed to be assessed against Kilen for twenty-nine of the taxpayer corporations. The IRS argues that it has not assessed any withholding tax liability against the corporations, and it may never do so. Accordingly, it may never seek to collect any § 6672 taxes from Kilen personally (beyond those it is already seeking). Art. III, § 2 of the Constitution limits the use of federal judicial power to the adjudication of "cases" or "controversies."[6] Without an assessment, the IRS contends, there is no actual case or controversy between the parties that is ripe for hearing and determination by this Court. As the IRS bluntly states, its position is that if § 505 permits this Court to resolve its potential § 6672 claims against Kilen, § 505 is unconstitutional.[7]

In response, Kilen makes three alternative arguments. First, the case or controversy requirement doesn't apply to bankruptcy courts which are Article I courts. Second, even if bankruptcy courts are not Article I courts, they are not bound by the case or controversy limitation when adjudicating a core proceeding such as the determination of a debtor's tax liability pursuant to § 505. Third, if the case or controversy requirement applies, an actual controversy exists on the facts of this case.

A. *Does the "case or controversy" requirement apply to bankruptcy courts?*

■ Kilen's first argument, that the case or controversy requirement does not apply

---

5. The IRS concedes that it has assessed tax deficiencies against two other corporations, Danica, Inc. and S.D. of Arizona. The IRS filed a proof of claim against Kilen in the amount of $218,941.36 for trust fund taxes owed by Danica, Inc. It also notified Kilen of a proposed assessment for the unpaid trust fund taxes of S.D. of Arizona.

6. "The Judicial Power shall extend to all Cases in Law and Equity, arising under this Constitution, the Law of the United States, and Treaties made, or which shall be made, under their authority; ... to controversies to which the United States shall be a party...." Article III, Section 2 of the United States Constitution.

7. "Lest there be any doubt, it is our contention that a determination by Congress to allow the bankruptcy courts to adjudicate tax liabilities never raised in any way or even investigated by the IRS would in fact be unconstitutional in view of the appealability of § 505 determinations to the district courts and beyond." Reply Brief of the United States, p. 7, n. 5.

to bankruptcy courts because they are Article I courts, is without merit.

■ 28 U.S.C. § 1334 gives original jurisdiction over all bankruptcy cases and all civil proceedings arising under the Bankruptcy Code or arising in or related to a bankruptcy case to the United States District Court.

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 157 provides that all cases and proceedings arising under the Bankruptcy Code may be referred by the district court to the bankruptcy court.

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

Under this section the district court has the discretion to refer or not to refer title 11 cases and proceedings to the bankruptcy judges as it sees fit. In the Northern District of Illinois, Local Rule 2.33 provides for the automatic referral of bankruptcy cases to bankruptcy judges. However, 28 U.S.C. § 157(d) gives the district court the power to withdraw the reference of any bankruptcy case or proceeding.[8] Therefore, while referrals of cases and proceedings in this District are automatic, they can be revoked by a district judge. In addition, although bankruptcy judges, are not Article III judges, *See Northern Pipeline*

*Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 61, 102 S.Ct. 2858, 2866, 73 L.Ed.2d 598 (1982); *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), bankruptcy courts are statutorily deemed to be "unit[s] of the district court" and bankruptcy judges "judicial officer[s] of the district court." *See* 28 U.S.C. § 151.

■ By virtue of this structure bankruptcy courts are adjuncts of the district court—they have no subject matter jurisdiction over title 11 cases in their own right. Unless a case or proceeding is referred to the bankruptcy court by the district court, the bankruptcy court has no authority to hear or determine the case or proceeding. *See* 28 U.S.C. §§ 1334, 157.

In light of the derivative nature of the bankruptcy court's power, it is obvious that the constitutional standards of Article III which bind the district court also bind the bankruptcy court. The district court cannot delegate to the bankruptcy court for hearing and determination that which the district court itself cannot hear and determine. In addition, a party who loses in a final determination before the bankruptcy judge has the right to appeal and have that appeal heard and determined by an Article III district judge. 28 U.S.C. § 158(a).[9] If it is assumed that a bankruptcy judge is not limited to hearing and determining cases and controversies, but can render advisory opinions, can those advisory opinions be reviewed by a district judge on appeal? Logic suggests the answer to the question is "no" as the district judge would still be bound by case or controversy limitations. *See* Art. III, § 2, United States Constitution.

This Court need not reach the question of whether a bankruptcy court staffed by judicial officers lacking lifetime tenure and

---

**8.** "The district court may withdraw in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

**9.** Even in a circuit where the Bankruptcy Appellate Panel (BAP) option has been made available, an appellant can take an appeal from a

final determination by a bankruptcy judge to the district court instead of the BAP. *See* 28 U.S.C. § 158(a) and (b)(1) and Bankruptcy Rule 8001(e). Indeed, unless both the appellant and appellee agree to BAP determination of an appeal from a bankruptcy judge's ruling, the appeal will go to the district court. *Id.*

protection against salary reduction could constitutionally be assigned by Congress to render advisory opinions. In establishing the bankruptcy courts of the United States, Congress assigned to those courts the resolution of certain disputes that otherwise could be resolved by the Article III district court. 28 U.S.C. §§ 1334, 157(a). By definition that means those disputes must involve cases or controversies or Congress could not have assigned them initially to the district court to resolve. Therefore, by statute, i.e., 28 U.S.C. §§ 1334 and 157(a), bankruptcy courts are limited to resolving disputes involving actual cases or controversies. Accordingly, this Court will not consider the question of whether Congress could constitutionally assign to an Article I bankruptcy court the determination of matters not involving actual cases or controversies since Congress to date has not chosen to do so.[10] Nor does this Court have to address the intriguing argument raised by the IRS in its reply brief to the effect that bankruptcy courts are Article III courts staffed by Article I judges. *See* Reply Brief of the United States, Heading "Bankruptcy Courts Are Not Article I Courts," p. 3 Dec. 27, 1990.

■ Kilen argues that bankruptcy courts are not bound by the case or controversy limitation of Article III in adjudicating core proceedings like the determination of tax liability under § 505 of the Bankruptcy Code. Kilen is wrong in this regard. Bankruptcy judges, like district judges sitting as trial judges in bankruptcy cases and proceedings, can only resolve actual cases and controversies. This is true regardless of whether the particular matter before the court is core or noncore. Congress could not empower a district court to render advisory opinions by calling a matter a core proceeding. *Cf. Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

■ The Declaratory Judgment Act, 28 U.S.C. § 2201, does not provide an exception to this conclusion. While it is true that the Declaratory Judgment Act does single § 505 of the Bankruptcy Code out for special treatment, it does not remove the case or controversy requirement for § 505. Instead the Declaratory Judgment Act simply provides that proceedings under § 505 of the Bankruptcy Code are an exception to the general rule barring use of declaratory judgment suits to resolve federal tax disputes. Indeed, the act reinforc-

---

**10.** Kilen places great weight on Justice Douglas's dissent in *Glidden Co. v. Zdanok*, 370 U.S. 530, 579–583, 599, 82 S.Ct. 1459, 1488–1490, 1498–1499, 8 L.Ed.2d 671 (1962). While Justice Douglas opined in *Glidden* that the case or controversy requirement need not necessarily apply to Article I courts, he was dealing with a very different situation than the issue before this Court. *Glidden* involved the issue of whether the Court of Claims and the Court of Customs and Patent Appeals were Article III courts, and was decided prior to the passage of the Bankruptcy Amendments and the Federal Judgeship Act of 1984 by which bankruptcy courts derive their jurisdiction. Unlike bankruptcy courts which were created as adjuncts to the district courts to hear only cases referred by the district courts, the Article I courts discussed by Justice Douglas in *Glidden* were created as agencies of the legislative or executive branch and given the primary function of rendering advisory opinions upon referral of matters from either branch. Thus, while Justice Douglas was of the view that Article I Courts are not bound by the case or controversy requirement, that is not relevant here since Congress has not assigned bankruptcy courts any responsibilities other than resolving cases and controversies.

Kilen also cites *In re Burckardt*, 8 B.R. 327 (Bankr.D.Puerto Rico 1980), for the proposition that there are no statutorily imposed restrictions on bankruptcy courts as Article I courts, limiting them to hearing only cases or controversies. *Burckardt* is of limited relevance since it was decided under former 28 U.S.C. § 1471, establishing a bankruptcy court with broad jurisdiction independent of the district court. This section was later held to be unconstitutional by *Marathon Pipe Line*, 458 U.S. at 50, 102 S.Ct. at 2861, and has since been repealed and replaced by 28 U.S.C. § 1334 and the present jurisdictional and procedural structure for bankruptcy courts set out in 28 U.S.C. §§ 151–158. Moreover, the *Burckardt* court looked to the legislative history of the 1978 Bankruptcy Code and concluded: "While Congress could grant a legislative or Article I court power to enter advisory opinions, the above quoted language from the Senate Report would not indicate that they have done so. Until they do so, we should not enter advisory opinions but limit our opinions to proceedings where there is a controversy, a dispute, and parties with adverse interests." *Burckardt*, 8 B.R. at 330.

es the requirement that there must be an actual controversy before a district judge or bankruptcy judge can render a declaratory judgment.

> [I]n a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than ... a proceeding under section 505 ... of title 11, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interest party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (emphasis added). In order for this Court to entertain Kilen's request for declaratory judgment regarding his tax liability, the Court must first find that an actual controversy exists between Kilen and the IRS.

### B. Is there an actual controversy?

■ Thus, the question becomes whether Kilen has pled facts giving rise to an actual controversy within the meaning of Art. III of the Constitution and the Declaratory Judgment Act or whether he has pled only speculative, hypothetical questions not justiciable by the bankruptcy court.[11] The Supreme Court has held that the difference between an abstract question and a "case or controversy" within the meaning of Art. III is one of degree and is not discernible by any precise test. *See Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 296, 99 S.Ct. 2301, 2307, 60 L.Ed.2d 895 (1979). However, the basic element of the case or controversy requirement is that there be individual injury. "At an 'irreducible minimum' the Constitution requires 'actual or threatened injury as a result of

the putatively illegal conduct of the defendant.' Nichol, Jr., *Ripeness and the Constitution,* 54 U. of Chi.L.Rev. 153, 157 (1987) quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758–759, 70 L.Ed.2d 700 (1982).

The concepts of standing, ripeness, and mootness are all elements of the "case or controversy" requirement. The focus of the IRS's argument is that the case between itself and Kilen is not "ripe" for adjudication since the IRS has filed no proof of claim nor issued a proposed assessment and may never do so. The ripeness component of the case or controversy requirement looks at when a claim can be brought. "As compared to standing, ripeness assumes that the asserted injury is sufficient to support standing, but asks whether the injury is too contingent or remote to support present adjudication." Wright, Miller, and Cooper, 13A *Federal Practice* § 3532 at 130 (2d ed.1984).

■ The Supreme Court set out a two part balancing test for determining whether a dispute is "ripe" for judicial determination. The factors to be considered are (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).[12] This test "assumes the existence of concrete injury" and then asks "if the injury is of sufficient magnitude to overcome problems of contingency or speculation in the decision on the merits." Nichol Jr., *Ripeness and the Constitution,* 54 U.Chi.L.Rev. 153, 175 (1987).

---

11. The "actual controversy" requirement in the Declaratory Judgment Act is the equivalent of the "cases" or "controversies" requirement of Article III of the Constitution. *Public Service Comm'n. v. Wycoff Co.,* 344 U.S. 237, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952); *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 463, 81 L.Ed. 617, *reh'g denied,* 300 U.S. 687, 57 S.Ct. 667, 81 L.Ed. 889 (1937); *Harris Trust & Savings Bank v. E–II Holdings, Inc.,* 926 F.2d 636, *reh'g denied,* 926 F.2d 636 (7th Cir.1991).

12. Like many of the cases discussing ripeness, *Abbott* concerned whether or not an "actual

controversy" existed such that a court might issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The word "controversy" in that Act is the equivalent of the word "controversy" in Article III of the Constitution. *Public Service Comm. v. Wycoff Co.,* 344 U.S. 237, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952); *Aetna Life Ins. v. Haworth,* 300 U.S. 227, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). Thus, the standards articulated by the Court in that context are equally relevant in identifying an actual controversy under Article III of the Constitution.

In *Abbott* several drug companies sought to enjoin the enforcement of Food and Drug Administration regulations requiring that drugs be labelled with both generic and trade names. The Court found that the case was fit for judicial decision since the issue of the Commissioner's authority was a purely legal question of statutory interpretation, and because the regulations were a "final action" within the meaning of the Administrative Procedure Act. The Court then found that the parties would suffer hardship because the new regulations would require the parties to either destroy all present stocks of advertising and promotional materials and invest heavily in new printing and supplies or risk serious civil and criminal penalties. "To require them to challenge these regulations only as a defense to an action brought by the Government might harm them severely and unnecessarily." *Abbott*, 387 U.S. at 153, 87 S.Ct. at 1518.

The Seventh Circuit followed the *Abbott* test in *Bethlehem Steel Corp. v. EPA*, 536 F.2d 156 (7th Cir.1976), in which the steel companies challenged EPA regulations calling for a study which would culminate in the implementation of air quality maintenance provisions by each state. The court held that the dispute was not ripe for adjudication since (1) the challenged actions were part of a continuing administrative process and therefore did not constitute "final action;" and (2) the harm to the steel companies was speculative until the regulations were completed. At that time the companies "will be met with the choice of either expending considerable sums of money to meet anti-pollution standards or face penalties and a loss of good will for noncompliance." *Id.* at 163. In reaching its decision the court expanded upon the harm component of the *Abbott* test:

> The other consideration to be taken into account in determining whether there is sufficient hardship to the parties to warrant our review is that of whether the challenged action will be reviewable in the future. If it will not be reviewable later, our review now may be warranted

to protect the right of parties to have the issues heard in court.

*Id.*

Applying these standards to Kilen's request for declaratory judgment regarding his potential trust fund tax liability as a responsible person of numerous taxpayer corporations, it is clear that the harm to Kilen is of sufficient magnitude so as to outweigh any perceived problems of speculation or contingency. Kilen is an individual Chapter 11 debtor. Although he has a confirmed plan, confirmation will only entitle him to discharge debts which are dischargeable under § 523(a) of the Bankruptcy Code. *See* 11 U.S.C. § 1141(d). Any obligations Kilen owes to the IRS for unpaid trust fund taxes are nondischargeable. *See* 11 U.S.C. § 523(a)(1). In his plan Kilen provides a fund in excess of $600,000 to pay any nondischargeable debts he owes to the IRS and other taxing bodies. If Kilen is unable to obtain a determination from this Court under § 505 of the amount of the IRS's claims against him, the money he has set aside under his plan for payments to tax collectors will go to his nonpriority unsecured creditors. Should that happen, and should the IRS thereafter assess trust fund taxes against him as a responsible person for the failed corporations, Kilen, as previously noted, would face the worst of all worlds. He would have a large nondischargeable debt for those taxes, and the money to pay the debt would no longer be available. Kilen needs declaratory relief under § 505, i.e., to have this Court determine what, if anything, he owes the IRS for trust fund liability, in order to insure that his confirmed plan is implemented as intended and the priority tax claims satisfied ahead of the claims of nonpriority unsecured creditors.

The IRS tries to argue that Kilen is not threatened with injury because the IRS has not filed a proof of claim nor issued a proposed assessment and might never file an assessment against Kilen for the 29 corporations. The IRS's position is that, without a claim or proposed assessment, there is no concrete controversy between the parties. In effect the IRS is balancing the *Abbott* factors, fitness of the issues for

judicial decision and hardship to the parties of withholding court consideration, to conclude that Kilen's injury is not of sufficient magnitude to overcome the IRS's conclusion that the case is not fit for judicial decision since no case or controversy exists between these parties. The Court rejects the IRS's analysis that the Kilen/IRS dispute is not fit for judicial determination because the Court concludes that an actual controversy exists between these parties even though the IRS has not filed a proof of claim or notice of proposed assessment.

Section 505(a) authorizes the bankruptcy court to determine "the amount or legality of any tax, ..., whether or not previously assessed, whether or not paid, and whether or not contested ..." 11 U.S.C. § 505. Arguably this language leaves open the issue of the jurisdiction of the bankruptcy court in a case where the taxing body has not filed a proof of claim. 3 *Collier on Bankruptcy*, ¶ 505.04 at 505–25 (15th ed.1990). However, a bit of history is instructive. Former § 2(a)(2A) of the 1898 Bankruptcy Act, was the predecessor to § 505 of the Bankruptcy Code. The relevant language of the Act, provision, § 2(a)(2A), was very similar to the language of § 505 of the current Bankruptcy Code.[13] Under the

Act, it was immaterial to the jurisdictional grant whether or not a proof of claim had been filed. *See Gwilliam v. United States*, 519 F.2d 407, 409 (9th Cir.1975); *Bostwick v. United States*, 521 F.2d 741 (8th Cir.1975); *In re Century Vault Co.*, 416 F.2d 1035 (3rd Cir.1969). Courts based this conclusion on the plain language of the statute and the "policy flowing therefrom to allow a bankrupt to start over and to enhance the individual's chances of financially rehabilitating himself by eliminating his old tax debts." *Gwilliam*, 519 F.2d at 409. The plain language of § 505 leads to the same conclusion. The policy remains the same under the Code as under the Act. Therefore, the result under the Code should be the same as the result under the Act.

It is logical to assume that Congress was aware of judicial interpretations of § 2(a)(2A) of the 1898 Bankruptcy Act when it formulated § 505 and chose not to overrule those decisions. The IRS argues that the phrase "whether or not previously assessed" in § 505(a) must be read to contemplate the many situations in which the IRS either files claims for taxes not yet assessed or at least takes some concrete steps toward asserting a liability [14]; how-

---

**13.** Section 2(a)(2A) of the Bankruptcy Act provided the bankruptcy courts with jurisdiction to:

"Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction...." 11 U.S.C. § 11(a)(2A).

**14.** The IRS's argument is as follows:

"The statements of Senator Dennis DeConcini, who delivered a floor address in lieu of a formal Senate Report, indicate that the 'House amendment authorized the bankruptcy court to rule on the merits of any tax claim involving an unpaid tax, fine, or penalty.' This quote immediately precedes the statement that such authority applies 'whether or not the tax ... had been previously assessed or paid.' Taken in this light, the statutory phrase indicating that the court may determine the amount or legality of any tax 'whether or not previously assessed' must be read to contemplate the many situations in which the IRS files claims for taxes not yet assessed or at least has taken concrete steps

toward assertion of a liability...." Reply Brief of the United States, pp. 8–9, Dec. 27, 1990. This argument is unpersuasive. The Court has examined the entire text of legislative comments regarding § 505 and finds nothing within those comments that is contrary to its ruling in this proceeding.

The IRS argues further that § 505(b) somehow indicates that § 505(a) was not meant to authorize the adjudication of potential tax liabilities never assessed by the IRS. This argument is also unpersuasive. The power given the bankruptcy court under § 505(a) to determine tax debts is limited by two factors only. First, the tax must not have been litigated and adjudicated before another court, § 505(a)(2)(A). Second, the court is prohibited from adjudicating the right of an estate to a tax refund unless the trustee has first requested a refund from the government authority administering the tax and was refused, § 505(a)(2)(B). There is no foundation for asserting that § 505(b) relates in any other way to § 505(a) to limit the bankruptcy court's powers to determine tax debts. *Cf. In re Goldblatt Bros., Inc.*, 106 B.R. 522, 533 (Bankr. N.D.Ill.1989) (concluding that the representative of the estate is not required to comply with § 505(b) before proceeding to have tax liability

ever, case law and the structure of the Bankruptcy Code do not support the IRS's interpretation.

*Gwilliam v. United States,* 519 F.2d at 407, dealt with an analogous situation—whether the bankruptcy court possessed jurisdiction under § 17(c) of the 1898 Bankruptcy Act to determine the dischargeability of the debtor's tax debts where the IRS had filed no proof of claim. Section 17 of the former Bankruptcy Act, 11 U.S.C. § 35(c), (repealed 1979), enabled either the debtor or the creditor to file an application to determine the dischargeability of any debt and authorized the court to determine dischargeability for which an application had been filed. In holding that jurisdiction was in no way affected by the government's failure to file a proof of claim, the *Gwilliam* court reasoned as follows:

> It is manifest to us that the purpose of Congress in enacting § 35(c) was to provide both the bankrupt and IRS with the option to utilize the bankruptcy court forum in which the effect of the discharge of a federal tax indebtedness could be definitively determined and adjudicated in a uniform fashion and to grant the bankruptcy court jurisdiction for that purpose. To conclude that the above option in favor of the Bankrupt could be utilized only if the IRS had filed a claim for the unpaid tax would distort and render meaningless the clearly expressed congressional language.

*Id.* at 411–412.

This reasoning is equally applicable in the case of a taxing body that failed to file a proof of claim. Just as section 35(c) of the Bankruptcy Act permitted either the debtor or creditor to file an application for the determination of the dischargeability of a debt, § 501 of the Bankruptcy Code and Bankruptcy Rule 3004 enable a debtor or trustee to file a proof of claim for a creditor who fails to file. The purpose of these provisions is to enhance the debtor's opportunity for financial rehabilitation in bankruptcy. *See* Senate Report No. 95–989 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Other code provisions also

adjudicated by the bankruptcy court under

support this policy. For example, although § 523(a)(1)(A) of the Bankruptcy Code provides that a debtor's liability for employment taxes is nondischargeable in bankruptcy, §§ 507(a)(7) and 1129(a)(9)(C) require that employment taxes receive priority treatment in a confirmed plan. These sections work together to ensure that tax liability gets paid thereby promoting the debtor's fresh start.

■ In light of this Code structure and policy, the fact that Kilen, rather than the IRS, filed the proof of claim for trust fund taxes in Kilen's bankruptcy is not dispositive of whether an actual controversy exists between these parties. Just as in *Gwilliam,* to conclude that there is no dispute that can be resolved by the bankruptcy court merely because the IRS had failed to file a proof of claim "would distort and render meaningless the clearly expressed congressional language." *Gwilliam,* 519 F.2d at 411–12. The controversy can be concrete even if it is the debtor who files the proof of claim on behalf of the creditor. Section 501 and Bankruptcy Rule 3004 in effect empower the debtor to create an actual controversy by filing a proof of claim on behalf of a creditor and then turning around and opposing allowance of the claim that the debtor filed on behalf of the creditor. *See, e.g., In re Jones,* 122 B.R. 246 (W.D.Pa.1990). This is what Kilen has done.

■ The IRS argues that it does not have a claim in bankruptcy against Kilen until it has either assessed him for deficiencies or sent notice of a proposed deficiency assessment. The IRS is incorrect that it has no claim recognizable in bankruptcy. The Bankruptcy Code's definition of "claim," represents a significant departure from prior law. The word "claim" was not defined under Section 1 of the 1898 Bankruptcy Act. However, the fact that a claim had to be provable under § 63 of the former Bankruptcy Act to be allowable significantly limited the kinds of debts that were payable in a bankruptcy case. 3 *Collier on Bankruptcy* at 101.04. By contrast

§ 505(a)).

"claim" under the Bankruptcy Code is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The legislative history confirms that Congress intended "claim" to include all obligations of the debtor in order to give the debtor the broadest possible relief in the bankruptcy court. *See Johnson v. Home State Bank,* —— U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991); *Pennsylvania Dept. of Public Welfare v. Davenport,* —— U.S. ——, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990); *In re Amfesco Indus., Inc.,* 81 B.R. 777 (Bankr. E.D.N.Y.1988); H.R. Rep. No. 95-595, p. 309, U.S.Code Cong. & Admin. News 1978, p. 6266; S.Rep. No. 95-989, p. 22, U.S.Code Cong. & Admin.News 1978, p. 5808.

The fact that the IRS has not determined the amount of Kilen's trust fund liability or even whether it will assess Kilen for unpaid trust fund taxes does not mean that the IRS has no claim against Kilen which can give rise to an actual controversy in bankruptcy. Under § 6672 of the Internal Revenue Code, Kilen's alleged liability to the IRS as a responsible person is entirely separate and distinct from each corporation's liability to the IRS under the same provision. Although it is contingent and unliquidated at this point, Kilen's potential liability is exactly the kind of obligation Congress wanted to have resolved within the bankruptcy process when it reformulated the definition of "claim." *See Davenport,* 110 S.Ct. at 2137 (Blackmun, J. dissenting) (noting that contingent and unliquidated claims that were "nonprovable" and therefore excluded from the bankruptcy process under the former Bankruptcy Act were the kind of claims the broader Code definition of "claim" was enacted to encompass).

Case law supports the broad reading of "claim." The Supreme Court held that a criminal restitution order on behalf of the Penn. Dept. of Public Welfare was a "claim" within the meaning of the Bankruptcy Code. *See Davenport,* 110 S.Ct. at

2126. The Court noted that the modifying language in § 101(5) "reflects Congress' broad rather than restrictive view of the class of obligations that qualify as a 'claim' giving rise to a 'debt'." *Id.* at 2130. The Supreme Court later reinforced this notion of a broad reading of the definition of "claim" by holding that a mortgage lien securing a debt for which a debtor's personal liability has been discharged in Chapter 7 is a "claim" under the Bankruptcy Code and is subject to inclusion in an approved Chapter 13 plan. *Johnson* —— U.S. ——, 111 S.Ct. 2150. The strong language of the Court in both these decisions suggests that bankruptcy courts should "rebuff virtually all attempts to characterize obligations as outside the scope of the definition [of claim] due to 'special' or unique characteristics of those obligations." 2 *Collier* 101.4 at 101-25. *See, e.g. In re Kim,* 125 B.R. 594, 598 (Bankr.C.D.Cal. 1991) ("It is clearly the intent of the Bankruptcy Code that almost any type of monetary obligation of the debtor should be considered a 'debt'."); *In re Cohen,* 122 B.R. 755, 758 (Bankr.S.D.Cal.1991) (Since unmatured, contingent homeowner's assessments are "claims" in bankruptcy, homeowner assessments levied post-petition are subject to the discharge provisions of the Code.)

Kilen's confirmed plan of reorganization allocates approximately $640,000 for the payment of tax liabilities. Kilen has asked the Court to determine whether the United States is entitled to any of this money for unpaid trust fund taxes. The Court's determination will not be based on an assumed set of hypothetical facts, but on events and conduct which have already occurred. Factual issues to be addressed include whether Kilen was a responsible person, whether those corporations in which Kilen was an insider owe employment taxes, and whether Kilen's conduct constituted willful failure to pay over taxes. There is a pot of money at stake here that is to be distributed to either the United States or Kilen's unsecured creditors. The imminent distribution of this money under the confirmed plan constitutes sufficiently real and immediate action to render the dispute

ripe for adjudication. The Court concludes that the United States has a contingent, unliquidated right to payment, i.e., a "claim", against Kilen's bankruptcy estate pursuant to § 6672 of the Internal Revenue Code. This "claim" constitutes the basis of the concrete controversy between Kilen and the IRS.

The Court also rejects the IRS's position with respect to the second *Abbott* factor that Kilen is not threatened with injury because the IRS has not filed a proof of claim or issued a proposed assessment and might never do so. Kilen's confirmed plan of reorganization allocates approximately $640,000 for the payment of tax liabilities, including the employment taxes at issue in this case. Under the specific language of 11 U.S.C. § 523(a)(1)(A) Kilen's liability for trust fund taxes is excepted from discharge "whether or not a claim for such tax was filed or allowed." If valid tax claims for employment tax liability are assessed against Kilen at some future date, the claims would survive bankruptcy although the IRS never filed a proof of claim in Kilen's bankruptcy. *See* Senate Report No. 95–989 (1978). Kilen could find himself liable to the IRS for hundreds of thousands of dollars after the bulk of his assets have been distributed to general unsecured creditors simply because the IRS had not gotten around to investigating the asserted tax liability of Kilen's 29 corporations during the pendency of the bankruptcy case.

This situation poses a direct threat to Kilen's fresh start in bankruptcy. The injury to Kilen is concrete and real since he is individually, not derivatively, liable under 26 U.S.C. § 6672. Kilen has already been assessed as an insider for trust fund liability with respect to one of the 31 corporations and received notice of a proposed assessment with respect to another corporation. Several of the remaining corporations have listed the United States as a creditor for more of the same kind of taxes. In light of the two assessments already

made, there is every likelihood that additional assessments will be forthcoming. The situation presented here is analogous to that of the drug companies in *Abbott*, 387 U.S. at 136, 87 S.Ct. at 1507. To require Kilen to wait until the IRS has made an assessment before he can have his tax liability determined might harm him severely and unnecessarily. Once the reserved fund has been distributed to unsecured creditors other than the IRS, Kilen will have to come up with additional funds to pay any future assessments. Also Kilen has no other forum for review other than the bankruptcy court as regards the distribution of these funds under the plan. *See Bethlehem Steel*, 536 F.2d at 163 (holding that if the challenged action will not be reviewable later, "review now may be warranted to protect the right of parties to have the issues heard in court.")

The IRS also argues that the possibility that it might assess Kilen in the future does not present a controversy that exists in fact but rather only a controversy that may occur in the future. In this regard the IRS relies on *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); *Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); and *Ashcroft v. Mattis*, 431 U.S. 171, 97 S.Ct. 1739, 52 L.Ed.2d 219, *reh'g denied*, 433 U.S. 915, 97 S.Ct. 2990, 53 L.Ed.2d 1102 (1977), among others. These decisions all stand for the proposition that harm which is only conjectural does not confer standing, even if past harm is admitted. In all these cases, however, it is important to note that part of the "speculation" and "conjecture" was the degree of likelihood that the *complaining persons* would again engage in the challenged activity. In Kilen's case, on the other hand, all the activities that would establish liability have already occurred.[15]

---

15. The IRS also argues that Kilen has not delineated what taxable quarters are involved, what corporate subsidiaries, if any, are involved, and the amount for each possible taxable quarter. These concerns are insufficient to render the dispute between Kilen and the U.S. hypothetical. The U.S. can obtain this information either by seeking a more definite statement from Kilen or by pursuing discovery.

The existence of concrete injury to Kilen is real. Whether Kilen might in the future fail to see that trust fund taxes are paid over is irrelevant. What Kilen needs to know at this time is what the consequences are of his involvement (if any) in previous failures to pay over trust fund taxes. Based on the above analysis, this Court concludes that Kilen's dispute with the IRS regarding trust fund taxes is ripe for adjudication.

## CONCLUSION

For the foregoing reasons, the motion by the United States for dismissal of Kilen's complaint to determine his tax liability with regard to unpaid employment taxes of the 29 corporations is denied.