In the Matter of INTER URBAN BROAD-
CASTING OF CINCINNATI, INC. d/b/a
WIZF Radio Station, Debtor.

INTER URBAN BROADCASTING OF
CINCINNATI, INC. d/b/a WIZF
Radio Station, Plaintiff,

v.

Thomas P. LEWIS, Todd P. Lewis, Todd
Lewis Corporation, James E. Scanlon,
and the United States of America,
Through the Department of the Trea-
sury, Internal Revenue Service.

Bankruptcy No. 91–15052–JAB.

Adv. No. 94–1145–JAB.

United States Bankruptcy Court,
E.D. Louisiana.

Jan. 17, 1995.

Philip K. Jones, Dena L. Olivier, Liskow &
Lewis, New Orleans, LA, for Barclays Busi-
ness Credit, Inc.

John M. Bilheimer, Trial Atty., Tax Div.,
U.S. Dept. of Justice, Washington, DC.

Frederick R. Bott, Deutsch, Kerrigan &
Stiles, New Orleans, LA, for James Scanlon.

## REASONS FOR ORDER

JERRY A. BROWN, Bankruptcy Judge.

This matter came before the court on Sep-
tember 28, 1994 as a hearing on the motion
of the United States of America, defendant,
to dismiss. (Pl. 17). The court took the
motion under advisement at the hearing.
The court has reviewed the record, the
pleadings, and the applicable law, and makes
the following determinations.

### A. Background

The Chapter 11 proceedings of Inter Ur-
ban Broadcasting of Cincinnati, Inc., d/b/a
WIZF Radio Station ("IUB–Cincinnati" or
the debtor) was initiated on November 27,
1991. The first amended plan of reorganiza-
tion proposed by Barclays Business Credit,
Inc. ("Barclays"), as modified (the "Con-
firmed Plan"), was confirmed on April 29,
1994.

This adversary proceeding was instituted
on June 17, 1994 by Barclays, on behalf of
the debtor, pursuant to the authorization
contained in the Confirmed Plan. Made de-
fendant are certain individuals and a corpora-
tion who had allegedly devised and partici-
pated in a scheme to transfer certain shares
of stock of IUB–Cincinnati owned by Thomas
P. Lewis to a corporation wholly owned by
his son, Todd Lewis. The Internal Revenue
Service ("IRS") was also named as a defen-
dant, as it had been the recipient of a letter
dated December 28, 1993 purportedly on be-
half of IUB–Cincinnati notifying the IRS that
the purported transfer of stock had terminat-

ed the S corporation status of the debtor as of December 27, 1993 (the "Notice").

The complaint alleges that the purported transfer of the shares was done for the purpose of changing the debtor's status from an "S" Corporation to a "C" Corporation. The complaint seeks to have all the acts relating to the purported transfer of stock, including the Notice, be declared void *ab initio* or rescinded. The complaint seeks a declaration that these acts shall not have any effect upon the election of IUB–Cincinnati to be treated as an S Corporation under the Internal Revenue Code. The complaint further seeks to have the Notice to the IRS withdrawn and declared to be null and void. Finally, the prayer requests judgment against the defendants "ordering the reinstatement of IUB–Cincinnati's election to be taxed pursuant to Subchapter S of the Internal Revenue Code of 1986, as amended, until closure of this case". (Complaint, p. 31).

### B. *Analysis*

The pending motion to dismiss seeks a dismissal of only the United States and the IRS; it does not seek dismissal of the other defendants. Barclays, the plan proponent, and James E. Scanlon, the accountant, oppose the motion to dismiss.

The United States contends that the court does not have jurisdiction to issue injunctions, declaratory judgments or advisory opinions prior to there being an actual controversy between a taxpayer and the government as to the amount of a tax liability.

Barclays responds that it does not seek an injunction against the IRS, but only a declaration that certain acts designed to alter the tax liability of the debtor were void.

The provisions of the Declaratory Judgment Act, 28 U.S.C. § 2201(a) provide in pertinent part:

In a case of actual controversy within its jurisdiction, except,—with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of Title 11, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Although this section excludes from its provisions any acts with respect to federal taxes, a proceeding under Section 505 or 1146 of Title 11 is expressly excepted from this exclusion. Thus, the issue to be determined is whether the complaint provides the basis for a proceeding under Section 505(a).

Section 505(a) of the Bankruptcy Code, 11 U.S.C. § 505, provides:

(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

11 U.S.C. § 505(a).

The United States argues that Section 505(a) does not authorize the requested relief, but only authorizes the court to "determine the amount ... of [a] tax." It asserts that the court has no jurisdiction to issue declaratory judgments or advisory opinions prior to there being an actual controversy between a taxpayer and the government as to the amount of a tax liability. The United

States contends that the plaintiff is seeking a ruling only as to its tax status which is a different question than the amount of a tax.

The United States relies upon the case of *In re Grand Chevrolet, Inc.*, 153 B.R. 296 (C.D.Cal.1993). In *Grand Chevrolet*, the bankruptcy court had ordered the substantive consolidation of affiliated corporations. Thereafter, the trustee sought a declaration that because of the substantive consolidation he was authorized to file a consolidated return with the IRS. No formal filing of any tax return had been made with the IRS. The district court reversed the bankruptcy court's determination that the trustee was authorized to file a consolidated return, holding that there was not any showing of an actual controversy in existence with the IRS. The *Grand Chevrolet* court stated:

> Pursuant to section 505, a bankruptcy court has the jurisdiction only to determine tax liabilities; there is no grant of jurisdiction to decide issues that are antecedent to the determination of tax liability. In effect, the declaratory relief granted by the Bankruptcy Court was the equivalent of an advisory opinion regarding filing status, which undoes the law of the Internal Revenue Code, but does not determine the debtors' tax liability. The ripeness doctrine was meant to prevent just such a situation.

153 B.R. at 299.

Barclays attempts to distinguish *Grand Chevrolet* by arguing that in the pending case the IRS was notified of the events which are the subject matter of the litigation and that an object of the litigation is the determination that this notification was invalid. Further, that absent an agreement by the IRS that the Notice was without effect, an actual controversy exists with regard to the legal effect of the Notice.

The court is unpersuaded by Barclays' attempt to distinguish *Grand Chevrolet*. The determination of the debtor's tax status as an S or C corporation is not a determination of the debtor's tax liability. *Id.* That the IRS was notified of the purported attempt to change the tax liability does not change the analysis. As stated by the *Grand Chevrolet* court:

Ultimately, this preliminary dispute may develop into a tax liability controversy and, at that point, even if the Trustee has yet to file a tax return, section 505 will vest the Bankruptcy Court with jurisdiction over it. Until the jurisdictional prerequisite of section 505 is met, (the bankruptcy court may "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax"), tax issues antecedent to tax liability determination are excepted from section 2201.

153 B.R. at 300.

Barclays relies upon the case of *In re Kilen*, 129 B.R. 538 (Bankr.N.D.Ill.1991). *Kilen* involved a debtor who sought a determination as to whether certain taxes and penalties which he allegedly owed were dischargeable. This issue affected distributions under his confirmed plan of reorganization. The IRS argued that an "actual controversy" did not exist under the Declaratory Judgment Act. The court stated that notwithstanding the failure of the IRS to act, an actual controversy existed, and it had the jurisdiction to adjudicate the issues. The court adopted the two-part balancing test for determining whether a dispute is "ripe" for judicial determination set forth in the case of *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), stating: "The factors to be considered are (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration". 129 B.R. at 544. The court found that the imminent distribution of the money under the confirmed plan constituted "sufficiently real and immediate action to render the dispute ripe for adjudication". 129 B.R. at 548–49.

Barclays argues that the injury to IUB–Cincinnati, if the issues are left unresolved as to the IRS, are that: (1) the issues will have to be relitigated with the IRS in the future, and (2) IUB–Cincinnati will be unable to file its tax returns with any certainty or to make distributions pursuant to the Confirmed Plan.

These alleged injuries do not get around the problem that the complaint seeks a determination of IUB–Cincinnati's tax status, a

**156**

matter antecedent to the determination of tax liability. *In re Grand Chevrolet,* 153 B.R. at 299. The case is not yet ripe for a decision as to the IRS.

Barclays' reliance on *In re Goldblatt Bros., Inc.,* 106 B.R. 522 (Bankr.N.D.Ill.1989) is similarly misplaced. In *Goldblatt,* the creditors committee of a debtor sought a judicial determination that the interest earned by a fund created by a plan of reorganization was not subject to taxation. The court held that the earnings on funds deposited in the account created pursuant to the Chapter 11 plan were part of the bankruptcy estate and taxability thereof could be determined by the bankruptcy court under Section 505. In *Goldblatt,* however, the fund clearly had earnings. Consequently, once it was determined that the fund was a taxable entity, there would be a tax. Further, the amount of the tax owed by the Unsecured Creditors' Committee was squarely before the court because it was contended that no tax was owed. In the pending case Barclays seeks a determination only with respect to the tax status. This does not come within Section 505.

An order will be entered in accordance with these reasons.

### *ORDER*

For the reasons assigned in the foregoing reasons for order issued this date, accordingly,

IT IS ORDERED, ADJUDGED, AND DECREED that the motion of the United States of America, defendant, to dismiss is GRANTED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the complaint in the pending case is DISMISSED WITHOUT PREJUDICE but only as to the United States of America, through the Department of the Treasury, and the Internal Revenue Service.