**Alpha ADKINS, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. C87–652Y.

United States District Court, N.D. Ohio, E.D.

July 19, 1988.

Daniel Daniluk, Youngstown, Ohio, Thomas J. Shorall, David A. Jones, Shorall and Jones, P.C., Pittsburgh, Pa., for plaintiffs.

Debra L. Stefanik, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

DOWD, District Judge.

### I. INTRODUCTION.

This is an action for refund of federal income taxes paid with respect to lump sum payments received by the plaintiffs in a settlement arising out of a law suit against their former employer, Crucible Steel Corporation, and the termination of the employee program for hospital medical benefits. The single issue presented is whether the lump sum payments are excluded from gross income under 26 U.S.C. § 106. The government claims that the lump sum payments received by the plaintiffs are gross income and therefore taxable income. The plaintiffs, on the other hand, claim that the lump sum payments are excluded from gross income under 26 U.S.C. § 106.

This case is not a class action notwithstanding the large number of plaintiffs in the case. It has been agreed between the parties, however, that the Court's decision as to the plaintiffs Alpha Adkins, Paul L. Haught, and Steve Jasenec will be a binding decision with respect to the remaining plaintiffs. The case was submitted to the Court on stipulated facts and the issue has been fully briefed by both parties.

### II. STIPULATED FACTS.

The stipulated facts, as prepared by the parties and reproduced below, are as follows:

1. The plaintiffs in this action are former employees of Crucible Steel Corporation, a division of Colt Industries, Incorporated, (hereinafter "the corporation") whose employment was terminated by their employer in calendar year 1984 or thereafter.

2. Prior to January 1984 the corporation proposed to terminate its contributions to a Program of Hospital–Medical Benefits for Eligible Pensioners and Surviving Spouses (hereinafter "the plan").

3. A lawsuit was filed on January 5, 1984 to prevent the corporation from terminating its contributions to the plan. A temporary settlement was reached in this lawsuit whereby a temporary modified contributory health insurance program (hereinafter "temporary plan") was implemented to provide continued coverage from April 1, 1984 through June 30, 1985.

4. By letter dated November 1, 1984 the corporation made a settlement offer to those eligible retirees or surviving spouses (hereinafter "pensioners") who did not want to await the outcome of the negotiations or the litigation in the case.

5. The corporation offered each pensioner the choice of a lump sum payment or continuing monthly cash payments which would be in full settlement of any claim against the corporation that the pensioner might have had for hospital and medical benefits under the plan.

6. The lump sum payments ranged from $6,000 to $20,000 and was dependent upon the recipient's age (and, thus, eligibility for Medicare) and marital status.

7. The decision to accept the corporation's settlement offer of the lump sum

payment or the monthly payments was entirely voluntary.

8. In order to elect the lump sum or monthly cash payments the pensioners needed to complete an election form and a release. The election form had to be postmarked by November 24, 1984.

9. The election form advised the pensioners that there could be tax consequences to electing either lump sum or monthly cash payments.

10. The pensioners who made the election were not required to use the lump sum or monthly cash payments for the purchase of medical insurance. Some pensioners (and plaintiffs herein) who elected lump sum payments did not use the payments for the purchase of medical insurance.

11. The plaintiffs (and pensioners) Paul L. Haught and Steve Jasenec elected to receive lump sum payments. They received $20,000 each. Haught and Jasenec paid federal and state taxes on the lump sum payments. They each deposited the balance of said payments in bank accounts and presently use the balance of the lump sum for the purchase of medical insurance and for uninsured medical expenses.

12. Plaintiff (and pensioner) Alpha Adkins elected to receive a lump sum payment of $10,000. He used a portion of this sum to pay federal and state taxes on the lump sum. Adkins receives disability retirement and Medicare benefits. He has not used the balance of the lump sum for the purchase of medical insurance. He deposited the balance of the lump sum payment in a bank account and is presently using a portion of the lump sum for uninsured medical expenses.

13. Plaintiffs Adkins, Haught and Jasenec timely filed claims for refund of federal income taxes paid with respect to these lump sum payments.

## III. DISCUSSION.

■ Gross income, as defined under the Internal Revenue Code, includes all accessions to wealth that are clearly realized and over which the taxpayer has complete dominion and control. *Commissioner v.* *Glenshaw Glass Co.*, 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955). The Internal Revenue Code defines gross income as meaning all income from whatever source derived unless excluded by law. 26 U.S.C. § 61. Moreover, all income is gross income unless the taxpayer can identify a specific statutory exception excluding the amount in question from gross income. *Roemer v. Commissioner of Internal Revenue*, 716 F.2d 693 (9th Cir.1983).

■ The plaintiffs rely on 26 U.S.C. § 106(a) in support of their claim that the lump sum payments received as a result of the settlement of the law suit are excludable from gross income. Section 106(a) provides that "[g]ross income does not include contributions by the employer to accident or health plans for compensation (through insurance or otherwise) to his employees for personal injuries or sickness." The plaintiff relies heavily on the phrase "through insurance or otherwise." The plaintiffs argue that payments made directly to the employee in this case are within the coverage of § 106 thereby excluding it from gross income.

The government takes the position that the payments by the employer directly to the plaintiffs cannot be construed as contributions to an accident or a health plan under § 106. The government argues that the "otherwise" contemplates situations wherein the employer creates a trust or a fund for accident and health benefits directly.

The government relies on a number of Internal Revenue Service revenue rulings as support for the proposition that payments directly to employees by employers for the purchase of health insurance is included within gross income. The revenue rulings are relevant to the issues presented but are not dispositive precedent.

In Revenue Ruling 57–33, 1957–1 C.B. 303 the Internal Revenue Service concluded that payments made by an employer directly to employees pursuant to a union contract for the purpose of purchasing individual hospitalization and surgical insurance coverage was included in gross income. The Internal Revenue Service was not per-

suaded by the fact that the union assumed responsibility for assuring that the payments were used for the insurance plans or that the payments were not being used for any other purpose. Revenue Ruling 57–33 was relied upon in Revenue Ruling 85–44, 1985–15 I.R.B. 5 where the service determined that court awarded damages for back pay includes unpair life and health insurance premiums were gross income. The service distinguished Revenue Ruling 61–146, 1961–2 C.B. 25 which held that amounts paid directly to employees as reimbursement for health insurance were excluded from gross income under section 106 because the employer verified the amounts and whether payments were actually made by the employee.

The government argues that in this case, the employees who elected the lump sum settlement have complete control over the monies in their respective bank accounts. Furthermore, there is no obligation or requirement imposed on the former employees to purchase health and accident benefits. The government argues that the employees have unfettered discretion to do what they please with the monies.

The plaintiff relies on the Internal Revenue Code Tax Regulation § 1.106–1 which provides that

> [t]he employer may contribute to an accident or health plan either by paying the premium (or a portion of the premium) on a policy of accident or health insurance covering one or more of his employees or by contributing to a separate trust or fund (including a fund referred to in section 105(e)) which provides accident or health benefits directly or through insurance to one or more of his employees. However, if such insurance policy, trust, or fund provides other benefits in addition to accident or health benefits, section 106 applies only to the portion of the employer's contribution which is allocable to accident or health benefits.

The plaintiff argues that Regulation 1.106–1 makes it clear that contributions intended for hospital-medical benefits do not have to be paid in the form of insurance, but may be paid in the forms of trust

or fund. In this case, according to the plaintiffs, the settlement payments are within the meaning of 1.106–1.

The Court declines to accept the position of the plaintiff. The plaintiffs have simply failed to identify a clear statutory exception for the inclusion of the lump sum payments as gross income. The facts of this case do not permit the plaintiff to rely on § 106. Section 106 clearly applies to contributions made by the employer to hospital, medical and accident benefit insurance programs, trusts, or funds. Section 106 does not contemplate, nor infer, direct payments to the employee. The plaintiffs have failed on their burden to establish that payments made directly to the plaintiffs are excludable under § 106.

Accordingly, the Court finds that the lump sum payments made in accordance with the settlement of the law suit filed on January 5, 1984 are gross income. The plaintiffs have failed to carry the burden of establishing a clear statutory exception for the inclusion of those payments in gross income. The Court finds that judgment shall be entered in favor of the defendant.

## IV. CONCLUSION.

For the reasons that appear above, the Court finds in favor of the defendant and judgment shall be entered accordingly.

IT IS SO ORDERED.