**Alpha ADKINS, et al.,
Plaintiffs–Appellants,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

No. 88–3763.

United States Court of Appeals,
Sixth Circuit.

Submitted June 16, 1989.

Decided Aug. 15, 1989.

David A. Jones, Shorall & Jones, Pittsburgh, Pa., for Alpha Adkins, plaintiffs-appellants.

Annette G. Butler, Asst. U.S. Atty., Cleveland, Ohio, Gary R. Allen, Acting Chief, William S. Rose, Jr., Asst. Atty. Gen., Debra L. Stefanik, Trial Atty., Mary F. Clark, Gilbert S. Rothenberg, U.S. Dept. of Justice, Tax Div., Washington, D.C., for U.S.

Before MARTIN and JONES, Circuit Judges, and COOK *, District Judge.

---

\* The Honorable Julian A. Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

BOYCE F. MARTIN, Jr., Circuit Judge.

Alpha Adkins and others appeal the grant of summary judgment in favor of the United States in their action seeking a refund of federal income taxes paid on their lump sum settlements of lawsuits they filed against a former employer. 693 F.Supp. 574. They frame the issue as follows:

Whether the district court erred in holding that lump-sum termination benefits paid to former employees of Crucible Steel Corporation pursuant to a settlement arising out of a lawsuit brought by the employees when the employer unilaterally terminated its contributions to a health insurance program are not excludable from gross income under 26 U.S.C. § 106.

Alpha Adkins, Paul Haught, and Steve Jasenec brought this action seeking refunds of unspecified amounts of federal income tax paid for 1984 or 1985. Although this is not a class action, the taxpayers' complaint also names 163 other individuals as plaintiffs who have agreed to be bound by the final decision of the courts. The district court decided this case based on the following stipulations of fact:

1. The plaintiffs in this action are former employees of Crucible Steel Corporation, a division of Colt Industries, Incorporated, (hereinafter "the corporation") whose employment was terminated by their employer in calendar year 1984 or thereafter.

2. Prior to January 1984 the corporation proposed to terminate its contributions to a Program of Hospital–Medical Benefits for Eligible Pensioners and Surviving Spouses (hereinafter "the plan").

3. A lawsuit was filed on January 5, 1984, to prevent the corporation from terminating its contributions to the plan. A temporary settlement was reached in this lawsuit whereby a temporary modified contributory health insurance program (hereinafter "temporary plan") was implemented to provide continued cover-

age from April 1, 1984, through June 30, 1985.

4. By letter dated November 1, 1984, the corporation made a settlement offer to those eligible retirees or surviving spouses (hereinafter "pensioners") who did not want to await the outcome of the negotiations or the litigation in the case.

5. The corporation offered each pensioner the choice of a lump sum payment or continuing monthly case payments which would be in full settlement of any claim against the corporation that the pensioners might have had for hospital and medical benefits under the plan.

6. The lump sum payments ranged from $6,000 to $20,000 and were dependent upon each recipient's age (and, thus, eligibility for Medicare) and marital status.

7. The decision to accept the corporation's settlement offer of the lump sum payment to the monthly payments was entirely voluntary.

8. In order to elect the lump sum or monthly cash payments the pensioners needed to complete an election form and a release. The election form had to be postmarked by November 24, 1984.

9. The election form advised the pensioners that there could be tax consequences to electing either lump sum or monthly cash payments.

10. The pensioners who made the election were not required to use the lump sum or monthly cash payments for the purchase of medical insurance. Some pensioners (and plaintiffs herein) who elected lump sum payments did not use the payments for the purchase of medical insurance.

11. The plaintiffs (and pensioners) Paul L. Haught and Steve Jasenec elected to receive lump sum payments. They received $20,000 each. Haught and Jasenec paid federal and state taxes on the lump sum payments. They each deposited the

balance of said payments in bank accounts and presently use the balance of the lump sum for the purchase of medical insurance and for uninsured medical expenses.

12. Plaintiffs (and pensioner) Alpha Adkins elected to receive a lump sum payment of $10,000. He used a portion of this sum to pay federal and state taxes on the lump sum. Adkins receives disability retirement and Medicare benefits. He has not used the balance of the lump sum for the purchase of medical insurance. He deposited the balance of the lump sum payment in a bank account and is presently using a portion of the lump sum for uninsured medical expenses.

13. Plaintiffs Adkins, Haught and Jasenec timely filed claims for refund of federal income taxes paid with respect to these lump sum payments.

Upon these facts the district court concluded that plaintiffs

simply failed to identify a clear statutory exception for the inclusion of the lump sum payments as gross income. The facts of this case do not permit the plaintiffs to rely on § 106. Section 106 clearly applies to contributions made by the employer to hospital, medical and accident benefit insurance programs, trusts, or funds. Section 106 does not contemplate, or infer, direct payments to the employee.

■ Gross income, as defined by section 61(a) of the Internal Revenue Code, "means all income from whatever source derived." 26 U.S.C. § 61(a). The Supreme Court has consistently held that this language subjects to taxation all accessions to wealth that are clearly realized and over which a taxpayer has complete dominion, except those specifically exempted. *Commissioner v. Glenshaw Glass*, 348 U.S. 426, 430, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955). It is undisputed that in this case the corporation paid the lump-sum payments in question directly to taxpayers without any use restrictions. The payments are accessions to wealth which must, therefore, be included

in income the year of receipt, unless the taxpayers can show that Congress has unequivocally provided an exemption for the payments. See, *e.g., United States v. Wells Fargo Bank*, 485 U.S. 351, 108 S.Ct. 1179, 1182, 99 L.Ed.2d 368 (1988) ("exemptions from taxation are not to be implied; they must be unambiguously proved"); *HCSC–Laundry v. United States*, 450 U.S. 1, 5, 101 S.Ct. 836, 838, 67 L.Ed.2d 1 (1981); *Commissioner v. Kowalski*, 434 U.S. 77, 82–83, 98 S.Ct. 315, 318–19, 54 L.Ed.2d 252 (1977).

■ Taxpayers have taken the position that section 106 provides a statutory basis for excluding from taxation the lump-sum payments they received. As the district court held, however, these payments do not fall within the provisions of section 106, because that section "clearly applies to contributions made by the employer to hospital, medical and accident benefit insurance programs, trusts, or funds ... [and] does not contemplate, nor infer, direct payments to the employee."

Resolution of taxpayers' claims to exemption from tax must begin with the language of the statute. See, *e.g., United States v. Wells Fargo Bank*, 108 S.Ct. at 1182; *Herbert v. United States*, 850 F.2d 32, 34 (2d Cir.1988). Section 106, as in effect for the years in issue, states in part as follows:

Gross income does not include contributions by the employer to accident or health plans for compensation (through insurance or otherwise) to his employees for personal injuries or sickness.

26 U.S.C. § 106 (1954).

The exclusion from income provided in section 106, by its plain terms, applies only to an employer's "contributions" to "accident or health plans." There is nothing in the language of the statute that provides an exemption for payments made by an employer directly to employees. As the Tax Court held in *Laverty v. Commissioner*, 61 T.C. 160, 165 (1973), *aff'd*, 523 F.2d 479 (9th Cir.1975) (emphasis in original):

Section 106 has no application to payments an employer makes directly to his employee.... It deals only with the

treatment of *contributions* by an employer to an accident or health plan for the benefit of his employees, either in the form of contributions to a separate fund or trust or by the payment of premiums on a policy of accident or health insurance. H.Rept. No. 1337, 83d Cong., 2d Sess., pp. 15, A35 (1954); S.Rept. No. 1622, 83d Cong., 2d Sess., pp. 185–186 (1954); sec. 1.106–1, Income Tax Regs. The Ninth Circuit, in affirming the Tax Court in *Laverty*, similarly held that section 106 does not encompass employer payments made directly to employees: "[Section] 106 only applies to contributions by an employer to an accident and health plan...." 523 F.2d at 480. Appellants cite to no authority indicating otherwise.

Taxpayers assert that the lump-sum payments were *"earmarked specifically* for hospital and medical care." As the Commissioner notes, however, "this assertion ... is squarely contradicted by the stipulated facts, which state that pensioners who elected to receive lump-sum cash payments 'were not required to use the ... payments for the purchase of medical insurance.'" Taxpayers argue that because the employer paid the funds for the purpose of replacing lost health benefits, the lump-sum payments qualify under the statute's "through insurance or otherwise" language. As the government points out, both the Tax Court and the Ninth Circuit rejected essentially the same argument in *Laverty*. This argument fails because it ignores the fact that the statute also requires that the funds *be part of a plan.* It is incredible to argue that in this case the employer contemplated almost 200 individual, unrestricted, "lump-sum plans." Accepting such a theory would provide a very dangerous precedent, an easy way for employees to retain the benefits of a salary while avoiding tax liabilities.

Finally, it is worth noting that Congress amended section 106 by section 1151(j)(2) of the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085. Section 106(a) now provides that "[g]ross income of an employ-

ee does not include employer-provided coverage under an accident or health plan." In its amendment, Congress obviously eliminated the possibility that future taxpayers could raise the "or otherwise" argument that the taxpayers raise here.

The judgment of the district court is affirmed.