**Arthur H. McKEAN and Jean D. McKean, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Nos. 94–256T, 94–279T to 94–284T, 94–290T to 94–294T, 94–319T and 94–320T.**

United States Court of Federal Claims.

June 23, 1995.

Henry G. Zapruder and Daniel W. Luchsinger, Zapruder & Odell, Washington, DC, for plaintiffs.

Elizabeth D. DePriest, with whom were Mildred L. Seidman and Asst. Atty. Gen.

Loretta C. Argrett, Dept. of Justice, Washington, DC, for defendant.

## OPINION

HODGES, Judge.

This case comes before the court on plaintiffs' motion for summary judgment and defendant's cross-motion for partial summary judgment on Counts I and II of plaintiffs' tax refund suit. The question before us is whether the portion of a Title VII cash backpay award received by plaintiffs representing the value of lost health insurance benefits and lost travel passes is includible in gross income under § 61(a) of the Internal Revenue Code, as the government contends, or excludable from gross income, as plaintiffs contend. In addition, we are asked to decide whether plaintiffs may exclude from gross income their *pro rata* share of attorney's fees which United Air Lines paid to counsel for plaintiffs' class action discrimination suit.

## FACTS

Plaintiffs are part of a group of former United Air Lines flight attendants who were discharged from employment between 1965 and 1968 as a result of United's requirement that flight attendants remain unmarried. In 1970, one of the discharged attendants brought suit against United on behalf of herself and all similarly situated former United flight attendants, alleging that the termination of their employment upon marriage constituted unlawful gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–1 *et seq. Romasanta, et al. v. United Air Lines, Inc.,* No. 70 C 1157 (N.D.Ill.1984). Plaintiffs sought backpay including the value of fringe benefits lost, reinstatement, and other non-monetary relief.

The *Romasanta* lawsuit was certified as a class action in 1979. In September 1984, the district court awarded backpay of $37,972,500 to the *Romansanta* plaintiffs, based on an estimated 1500 eligible claimants. The backpay award included lost wages plus interest (81.4% of the award), health insurance benefits plus interest (2.8% of the award), and lost travel passes plus interest (15.8% of the

award). No restrictions were placed on the recipients' use of any of the backpay proceeds. A July 1986 settlement agreement set United's minimum liability at $32,732,252. Its actual liability depended on the number of claimants who qualified for a full share of the award, and the number who would accept a half-share in exchange for reinstatement. This amount was deposited into an escrow account in January 1987.

The district court ordered United to pay $4,870,000 to class counsel for attorney's fees and costs, in November 1988. In December, United paid each of 1,179 full-share claimants $16,387.65 in backpay wages and benefits. Each full-share claimant also received a check for interest totalling $5,947.92 from the escrowed settlement fund. United paid each of 481 half-share claimants $8,193.83 in backpay wages and benefits, in addition to $1,992.58 of interest.

Pursuant to the settlement agreement, United withheld federal income and FICA taxes, and in some cases, state income taxes from the checks. United also reported for each claimant a *pro rata* share of the $4,866,-912 in attorney's fees and costs that United paid to class counsel as "Other Compensation".

Plaintiffs filed federal income tax returns for 1988, reporting as gross income their share of backpay wages and benefits, interest, and attorney's fees. In March and April 1992, plaintiffs filed claims for refund of the federal income taxes withheld on the backpay and paid on the interest they had received in 1988 under the *Romasanta* settlement. Plaintiffs' claims were disallowed in full in May and July 1992 and July 1993.

In Count I of plaintiffs' complaints, to which these cross-motions for summary judgment apply, plaintiffs seek to exclude from gross income their *pro rata* shares of the

portions of the backpay award representing the value of lost health insurance benefits and lost travel passes.[1] Plaintiffs also seek in Count II the exclusion from income of their *pro rata* share of attorney's fees, paid to counsel by United for the class action plaintiffs pursuant to the *Romasanta* settlement.[2]

## DISCUSSION

Section 61(a) of the Internal Revenue Code defines gross income to include "all income from whatever source derived." 26 U.S.C. § 61(a) (1988). The Supreme Court consistently has held that section 61(a) subjects to taxation all accessions to wealth that are clearly realized and over which a taxpayer has complete dominion, except those specifically exempted. *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955).

■ The payments to plaintiffs representing lost health insurance benefits and lost travel passes are accessions to wealth which must be included in their incomes in the year of receipt, unless the taxpayers can show that Congress unequivocally has provided an exemption for the payments. *See e.g., United States v. Wells Fargo Bank*, 485 U.S. 351, 108 S.Ct. 1179, 99 L.Ed.2d 368 (1988) ("exemptions from taxation are not to be implied; they must be unambiguously proved").

Plaintiffs argue that the portion of their cash backpay award representing the value of lost health insurance benefits and lost travel passes should be exempt from tax under the "origin of claim" doctrine as set forth by the Supreme Court in *United States v. Gilmore*, 372 U.S. 39, 48–49, 83 S.Ct. 623, 628–29, 9 L.Ed.2d 570 (1963). The origin of claim doctrine traditionally has been used to characterize legal expenses for federal in-

1. Plaintiffs' motion for summary judgment with regard to Count I of plaintiffs' complaints does not include the consolidated cases of *McKean* and *Dulin*. These two cases are subject to motions to dismiss by defendant on separate grounds not applicable to the other plaintiffs. Plaintiffs' motion does include two of the plaintiffs joined to the *Hanscom* complaint through notice filed on June 10, 1994: *Kirklen* and *Miller*.

2. Plaintiffs request summary judgment with regard to Count II of the complaints in only two of the consolidated cases: *Kirklen* and *Miller*. These are two of the cases joined to the *Hanscom* complaint through notice filed on June 10, 1994. The remainder of the consolidated cases are subject to defendant's motion to dismiss on variance grounds, except for *McKean* and *Dulin*, which are subject to motions to dismiss by defendant on separate grounds.

come tax purposes by the origin of the claim litigated. *See Woodward v. Commissioner*, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970).

Courts have extended the origin of claim doctrine to the characterization of Title VII damage recoveries, looking to the nature of the claimed injury as the basis for the taxability of the damage award (*i.e.*, personal or economic); *see, e.g., Roemer v. Commissioner*, 716 F.2d 693, 697 (9th Cir.1983).

The Supreme Court has ruled that a personal injury stemming from the violation of an anti-discrimination employment statute may be characterized as personal or economic depending on the nature of remedies provided by the statute, and that any damage recovery for personal violations would be nontaxable while economic damages are taxable. *United States v. Burke*, 504 U.S. 229, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992). Thus, where a statute provides only for the remedies of backpay and injunctive relief, such relief is economic in nature and any recovery of backpay would be taxable. *Id.* at 236–38, 112 S.Ct. at 1872.

While the origin of claim doctrine has been used to characterize damage awards for tax purposes based on the nature of the injury recovered on, it has not been used to break down an award of backpay into compensation for taxable wages and compensation for nontaxable fringe benefits. We have no precedent for such apportionment of a cash backpay award. To the contrary, the Internal Revenue Service has made it clear that court-awarded damages of cash backpay are includible in gross income in their entirety, even where a portion of the backpay represents lost nontaxable fringe benefits. *See* Rev.Rul. 85–44, 1985–1 C.B. 22.

Plaintiffs rely heavily on Justice Frankfurter's concurring opinion in *United States v. Kaiser*, 363 U.S. 299, 80 S.Ct. 1204, 4 L.Ed.2d 1233 (1960), specifically for the proposition that "payment which compensates for a loss of something which would not itself have been an item of gross income is not a taxable payment." *Id.* at 311, 80 S.Ct. at 1211. Justice Frankfurter derives this principle from twenty-five Internal Revenue Service and Treasury Department pronounce-

ments contained in an appendix attached to his concurring opinion. *Id.* at 317, 80 S.Ct. at 1214–15. Justice Frankfurter's principle calling for the exclusion of recoveries of nontaxable items did not intend to override Internal Revenue Service and Treasury Department pronouncements, but rather is defined and circumscribed by such pronouncements.

In Rev.Rul. 85–44, 1985–1 C.B. 22, a recent example of the type of pronouncement considered by Justice Frankfurter in *Kaiser*, the Internal Revenue Service has made it clear that court-awarded damages in the form of cash payments representing nontaxable fringe benefits are includible in gross income. The Service's reasoning is based on Rev.Rul. 75–241, 1975–1 C.B. 316, which states that cash payments to employees in lieu of nontaxable fringe benefits are taxable. Nothing in Justice Frankfurter's concurring opinion in *Kaiser* undermines either the correctness or the authority of these rulings.

■ Plaintiffs argue alternatively that the portion of their cash backpay award representing the value of lost health insurance benefits and lost travel passes should be excluded on statutory grounds. They contend that section 106 of the Internal Revenue Code provides a statutory basis for excluding the portion of the payments representing lost health insurance benefits.

Resolution of taxpayers' claims to exemption from tax must begin with the language of the statute. *Herbert v. United States*, 850 F.2d 32, 34 (2d Cir.1988). Section 106(a) provides that the "[g]ross income of an employee does not include employer-provided coverage under an accident or health plan." Therefore this section provides an exemption only for employer contributions to an "accident or health plan." It does not carve out an exclusion for cash payments made directly to employees by an employer.

In *Adkins v. United States*, 882 F.2d 1078 (6th Cir.1989), the court held that lump-sum payments to taxpayers in settlement of lawsuits against their former employer concerning the employer's proposed termination of contributions to a health benefits plan did not fall with the section 106 exclusion for contri-

butions by an employer to accident or health plans. The court ruled that section 106 did not provide an exemption for payments made by an employer directly to its employees. *Id.* at 1080–81, citing *Laverty v. Commissioner,* 61 T.C. 160, 165, 1973 WL 2583 (1973), *aff'd,* 523 F.2d 479 (9th Cir.1975).

Furthermore, Rev.Rul. 85–44, 1985–1 C.B. 22 states that payments made to an individual as court-awarded damages for unpaid health insurance premiums are includible in the individual's gross income notwithstanding section 106. The backpay award made by United was not in the nature of a reimbursement, as plaintiffs contend, and thus is not excludable under section 106 pursuant to Rev.Rul. 61–146, 1961–2 C.B. 25. United did not verify that plaintiffs purchased separate insurance coverage during the period they were discharged from employment, before paying the award.

■ Plaintiffs contend that section 132 provides a statutory basis for excluding the portion of the backpay award that represented the value of lost travel passes, because travel passes qualify as a no-additional-cost service. Section 132(a) provides that "[g]ross income shall not include any fringe benefit which qualifies as a—(1) no-additional-cost service." However, nothing in section 132 states that a cash substitute for no-additional-cost services also is subject to the exclusion (except for the case of certain reimbursements for parking expenses). Furthermore, even if plaintiffs' settlement had called for the back payment of no-additional-cost services in kind, the section 132 exclusion extends only to those no-additional-cost services provided by an employer to current, retired, or disabled employees. Temp. Treas.Reg. § 1.132–1T(b)(1)(i) (1985).

■ Congress intended for Title VII to compensate victims of discrimination by restoring them to the wage and employment positions they would have occupied absent the unlawful discrimination. *Burke,* 504 U.S. at 238–40, 112 S.Ct. at 1873 (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 412, 95 S.Ct. 2362, 2369, 45 L.Ed.2d 280 (1975)). But receiving cash is not the same as receiving a fringe benefit of the same value. *See* Rev.Rul. 75–241, 1975–1 C.B. 316. An award

of cash in lieu of nontaxable fringe benefits allows plaintiffs to use the cash however they see fit. Our tax laws declare the price of such economic freedom to be the taxability of those funds. Plaintiffs here received cash in lieu of nontaxable fringe benefits as part of the settlement of their discrimination suit. Including the portion of their cash awards representing these fringe benefits in gross income, supports the policy of parity in economic position called for by Title VII.

Plaintiffs also seek to exclude from income their *pro rata* share of attorney's fees paid to counsel for the class action discrimination suit, and they offer substantial support for their position on this issue. Defendant does not challenge plaintiffs' position on this issue as applied in the two cases designated by plaintiffs in their motion. Because defendant does not challenge the merits of plaintiffs' position in its cross-motion for summary judgment, plaintiffs' motion for summary judgment with regard to the issue of excluding attorney's fees will be granted.

## CONCLUSION

The payments to plaintiffs for lost health insurance benefits and lost travel passes are includible in gross income absent a specific exemption. Plaintiffs have not shown clear support for excluding these payments. Defendant's cross-motion for partial summary judgment on Count I of the consolidated complaints is GRANTED; plaintiffs' motion on that count is DENIED.

Defendant does not challenge the merits of plaintiffs' position on the question involving excludability of plaintiffs' *pro rata* share of attorney's fees paid by United to counsel for the class action discrimination suit. Plaintiffs' motion for summary judgment on Count II of the *Kirklen* and *Miller* complaints therefore is GRANTED.