In re Amoskeag Bank Shares        CV-97-540-SD   09/10/98
          UNITED STATES DISTRICT COURT FOR THE

                DISTRICT OF NEW HAMPSHIRE


<u>In re: Amoskeag Bank Shares, Inc.</u>      Bankr. No. 91-13065


<u>United States of America,</u>
<u>Internal Revenue Service</u>

        v.                              Civil No. 97-540-SD

<u>Amoskeag Bank Shares, Inc.;</u>
<u>Thomas Quarles, Sr.</u>


                        O R D E R


     The United States of America, Internal Revenue Service (the

government) appeals from the bankruptcy court's decision granting

defendant Thomas Quarles, Sr.'s motion for summary judgment and

denying the government's motion to dismiss or for summary

judgment.  Two issues are presented on appeal:  (1) whether the

bankruptcy court had subject matter jurisdiction; and (2) whether

the bankruptcy court properly determined that the estate's

proposed distribution to Quarles is wages from which the trustee

must withhold taxes.

Background

Quarles retired from Amoskeag Bank (Amoskeag) in 1988. Upon retirement he was promised lifetime health insurance coverage. His health insurance coverage was terminated in 1991, however, when Amoskeag Bank filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code. Quarles filed a claim against the estate for $56,000 to recover $16,000 spent on medical services since he retired and to pay the cost of future medical expenses and health insurance.

After Amoskeag filed for bankruptcy, its trustee, Dennis Bezanson, initiated an adversary proceeding against the Internal Revenue Service (IRS) seeking a declaratory judgment regarding the estate's tax liabilities pursuant to 11 U.S.C. § 505(a). Quarles intervened in the suit and filed a motion for summary judgment. He requested the bankruptcy court declare that his claim was not for wages, and thus not subject to Federal Insurance Contributions Act (FICA) and Federal Unemployment Tax Act (FUTA) taxes, and income tax withholding. Although FICA and FUTA impose taxes on the employer, these taxes in essence would be paid by Quarles because any money paid to the IRS would deplete the fund available to satisfy his claim. After finding that Quarles had standing to pursue this matter and that it had subject matter jurisdiction, the bankruptcy court held that

2

Quarles' $56,000 claim was not wages within the meaning of the Internal Revenue Code and that the trustee had no obligation to pay FICA or FUTA taxes or to withhold income taxes. The government appeals that decision.

## Discussion

### 1. Standard of Review

A district court's review of a bankruptcy court proceeding is de novo as to rulings of law, but all factual findings will be accepted unless clearly erroneous. See <u>Jeffrey v. Desmond</u>, 70 F.3d 183, 185 (1st Cir. 1995) (citing <u>In re SPM Mfg. Corp.</u>, 984 F.2d 1305, 1311 (1st Cir. 1993); <u>In re GSF Corp.</u>, 938 F.2d 1467, 1474 (1st Cir. 1991)); Bankr. Rule 8013.[1]

---

[1]Bankr. Rule 8013 states:

> On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

3

2. Section 505(a)

The IRS argues that the bankruptcy court lacked subject matter jurisdiction over the proceeding below. The bankruptcy court decided the matter pursuant to 11 U.S.C. § 505(a), which allows the bankruptcy court to

> determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

On its face, the statute only provides for two exceptions. The court may not determine "the amount or legality of a tax . . . if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal . . . before the commencement of the [bankruptcy] case." Id. Section 505(a) also prohibits the court from determining the estate's right to a refund until the trustee has properly requested a refund and 120 days have elapsed. Although the bankruptcy court's power under section 505 appears broad, most courts have limited its application to determinations of the debtor's or estate's tax liability. See, e.g., Brandt-Airflex Corp. v. Long Island Trust Co. (In Re Brandt-Airflex), 843 F.2d 90, 96 (2d Cir. 1988); United States v. Huckabee Auto Co., 783 F.2d 1546, 1549 (11th Cir. 1986). "[A] literal reading of § 505(a) could lead to absurd results: '[T]aken at face value, without recourse to the

4

legislative history, § 505 makes the Bankruptcy Court a second tax court system, empowering the Bankruptcy Court to consider "any" tax whatsoever, on whomsoever imposed.'" Brandt-Airflex, supra, 843 F.2d at 96 (quoting In Re Interstate Motor Freight, 62 B.R. 805, 809 (Bankr. W.D. Mich. 1986)).

In this case, the bankruptcy court's application of section 505(a) did not exceed its permissible scope. The court specifically limited its decision, stating, "This determination does not resolve any remaining disputes between the Internal Revenue Service and Thomas Quarles, Sr. regarding Mr. Quarles' gross income amount and tax liability thereon." Order of September 18, 1997, at 7. Thus the bankruptcy court did not overstep its subject matter jurisdiction under section 505(a).

The IRS nonetheless raises a host of defenses attacking the court's decision. The government asserts that Quarles did not have standing to raise the issue, the government has not waived its sovereign immunity, and the controversy was not ripe. These common defenses take on a slightly different hue in this case due to Quarles' status as an intervenor rather than an original party.[2]

---

[2]Bankruptcy Rule 7024 permits parties to intervene in adversary proceedings as provided in Fed. R. Civ. P. 24.

Article III of the Constitution forbids the federal courts from deciding a case in the absence of a justiciable "case or controversy."[3]  U.S. CONST. art. III.  To satisfy the constitutional requisite, the plaintiff must make three showings.

> First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally protected interest which is (a) concrete and particularized and (b) "actual or imminent" . . . .  Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations omitted).  In addition to this constitutional aspect, standing has a judicially created prudential component.  15 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE ¶ 101.50 (3d ed. 1998).  "The 'prudential principles' of standing require that a plaintiff establish that he or she is the proper proponent of the asserted right, that the right asserted belongs to the claimant rather

---

[3]Although the bankruptcy court is not an Article III court, its jurisdiction is similarly limited by the constitutional standing requirements.  See In re Kilen, 129 B.R. 538, 542 (Bankr. N.D. Ill. 1991).  This conclusion follows from the fact that the district court has original jurisdiction in cases arising under Title 11, but may refer these cases to the bankruptcy court.  See U.S.C. §§ 157, 1334.  The district court cannot delegate a case to the bankruptcy court which the district court itself cannot hear.  See Kilen, supra, 129 B.R. at 542.

than a third party, and that the grievances asserted are not conjectural or generalized."  Id. § 24.03[2][d].

In this case, there was already a justiciable controversy before the bankruptcy court; the case was initiated by the trustee, who unquestionably had standing to seek a tax determination.  Thus the question is not whether there was a justiciable controversy, but whether Quarles was a proper party to the action.  Federal courts are not in agreement regarding whether applicants to intervene must independently satisfy standing requirements.  See id.  Courts that have required intervenors to satisfy constitutional standing requirements, in addition to Rule 24's requirements for intervention, reason that "Congress could no more use Rule 24 to abrogate the Article III standing requirements than it could expand the Supreme Court's original jurisdiction by statute."  Mausolf v. Babbitt, 85 F.3d 1295, 1300 (8th Cir. 1996).  On the other hand, courts that do not impose constitutional standing requirements on a would-be intervenor reason that because the original parties have already established a case or controversy, "there [is] no need to impose the standing requirement upon the proposed intervenor." United States Postal Service v. Brennan, 579 F.2d 188, 190 (2d Cir. 1978).

The United States Supreme Court has not clarified the issue. In Diamond v. Charles, the Court required an intervenor to meet the constitutional standing requirements to continue a suit in the absence of the original party on whose side he intervened. 476 U.S. 54, 64 (1986). The Court, however, explicitly declined to decide whether a party must fulfill the constitutional standing requirements to intervene. See id. at 68-69. In an earlier case, the Court had held that a union member could intervene in a suit, although he could not have initiated the suit because the statute under which the suit was brought provided that the Secretary of Labor was the only person who could initiate suit. See Trbovich v. United Mine Workers, 404 U.S. 528, 537 (1972). Thus the Court held that statutory standing is not a prerequisite to intervention.

In this case, the court need not decide whether Article III standing is a prerequisite to intervention because constitutional standing would not bar Quarles' participation in this suit. Quarles faces an imminent injury because if the trustee withholds FICA, FUTA, and income taxes from Quarles' claim, Quarles will receive significantly less than the $56,000 he requested. The injury is directly traceable to the conduct of the IRS, whose assertions that Quarles' claim is wages and that the trustee must withhold taxes are the cause of Quarles' injury. His injury is

8

likely to be "redressed by a favorable decision," Lujan, supra, 504 U.S. at 560, because if the court finds that his claim is not wages from which taxes must be withheld, Quarles will receive the exact sum he requested. Thus Quarles satisfies the constitutional standing requirements.

Although Quarles meets the irreducible minimal constitutional standing requirements, the government argues, based on Middlesex Sav. Bank v. Johnson, 777 F. Supp. 1024, 1029-30 (D. Mass. 1991), that a third party does not have standing to contest another's tax liability. Although some courts have applied the prudential standing requirements, such as the rule disfavoring third-party standing, to intervenors, this court sees no reason for doing so. See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 464-70 (5th Cir.), cert. denied sub nom., Morial v. United Gas Pipe Line Co., 469 U.S. 1019 (1984). The prudential component of standing consists of "judge-made limitations on standing, designed to foster considerations of litigation effectiveness and judicial restraint." MOORE, supra, § 101.50. In a case such as this, in which the court must decide the same issue regardless of whether or not the intervenor participates, the prudential limits on standing are less relevant. Because Quarles has not asserted any additional claims, his participation in this case did not delay

9

disposition of the litigation nor offend the principle of judicial restraint.

The IRS next argues that the bankruptcy court's exercise of jurisdiction violated the principle of sovereign immunity because the IRS has not consented to suit. Section 106 of the bankruptcy code, however, explicitly waives sovereign immunity with respect to section 505, the section under which the bankruptcy court decided the case. See 11 U.S.C. §§ 105, 106. Thus sovereign immunity is only a potential concern if section 505 is construed as waiving sovereign immunity to actions by the trustee, but prohibiting participation by an intervenor. The court finds no reason to construe the law so strictly. Although waivers of sovereign immunity are narrowly construed, the government has explicitly waived sovereign immunity vis-à-vis section 505. See Id. § 106. Quarles' presence in this case does not change the nature of the proceeding sufficiently to raise sovereign immunity concerns. Undoubtedly, if the intervenor had sought to add new claims to the case, the court would need to find independent waivers of sovereign immunity for the additional claims. In this case, however, Quarles' participation did not expose the government to unanticipated claims.

The government asserts that this matter was not ripe for review because FICA taxes "are not incurred until the date that

10

the wages are paid," and FUTA taxes are due at the end of the calendar year. Brief of the Appellant United States of America at 20-21. Ripeness, like standing, is a blend of constitutional and prudential requirements rooted in Article III's case or controversy requirement. The ripeness requirement prevents courts from issuing advisory opinions or deciding cases based upon hypothetical facts. See MOORE, supra, § 101.75. "The difference between an abstract question and a controversy . . . is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy." Maryland Cas. Co. v. Pacific Coal Oil Co., 312 U.S. 270, 273 (1941). The most important factors the court must balance are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbot Laboratories v. Gardner, 387 U.S. 136, 149 (1967). The critical question in determining whether an issue is fit for judicial decision is whether the claim "'involves events that may not occur as anticipated, or indeed may not occur at all.'" Lincoln House, Inc. v. Dupre, 903 F.2d 845, 847 (1st Cir. 1990) (quoting 13A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3532.2, at 141 (1984)).

This case clearly does not involve hypothetical facts or contingencies that may never occur. The trustee will pay

11

Quarles' claim. And when he does so, if the IRS is correct, it will be a taxable event. Waiting until the money has been paid will not make the issue more amenable to judicial decision. Thus the case is fit for judicial resolution.

Furthermore, waiting until after the tax has accrued would impose a hardship on the parties. Indeed, section 505 was intended to allow the trustee to settle the estate quickly without "fac[ing] potential post-bankruptcy tax liabilities. . . ." S. Rep. No. 95-989, at 68 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5854. Following the procedure suggested by the government --distributing the money, withholding taxes and then keeping the estate open while seeking a refund--would hinder expeditious administration of the estate. Quarles also would be injured because any tax paid out of the estate would diminish the amount available to pay his claim.

The government's further assertion that section 505(a) does not permit the bankruptcy court to determine tax liability before the tax is due is not persuasive. The government calls the court's attention to the Anti-Injunction Act, which prohibits suits to restrain the assessment or collection of any tax. See Brief of the Appellant United States of America at 21-22 (citing 26 U.S.C. § 7421(a)). Although it is true as a general proposition that the statutory scheme seeks to facilitate the

12

expeditious collection of taxes by avoiding pre-enforcement judicial interference, section 505(a) is an explicit exception to the general rule. In contrast to the normal rule that taxpayers must pay first and litigate later, section 505(a) expressly allows the bankruptcy court to determine a tax "whether or not previously assessed, [and] whether or not paid . . . ." The Declaratory Judgment Act displays Congress's intent to make the bankruptcy context an exception to the rule. See 28 U.S.C. § 2201. Although the Declaratory Judgment Act prohibits federal courts from issuing declaratory judgments with respect to federal taxes, section 505 is explicitly exempted from this prohibition.

### 3. Wages

Thus the court reaches the substantive issue presented by this case--"whether lifetime medical insurance benefits are 'wages' within the meaning of the Internal Revenue Code." Bankruptcy Court Order on Cross Motions for Summary Judgment at 4. The Internal Revenue Code requires employers to withhold income taxes from their employees' wages. For this purpose, wages are defined by section 3401(a) of the Internal Revenue Code as "all remuneration . . . for services performed by an employee for his employer" except for specific exclusions. 26 U.S.C. § 3401(a). Quarles does not argue that his claim is not

13

remuneration for services, but argues that it is excluded by an exception for health benefit plans. Section 106(a) of the Internal Revenue Code excludes employer-provided coverage under a health plan from gross income. Even assuming payments excluded from gross income under section 106(a) are not wages within the meaning of section 3401(a),[4] the proposed payment is not exempt from income tax withholding. "[E]xemptions from taxation are not to be implied; they must be unambiguously stated." United States V. Wells Fargo Bank, 485 U.S. 351, 354 (1988). The plain language of section 106 limits the exemption to employer contributions to a plan. "There is nothing in the language of the statute that provides an exemption for payments made by an employer directly to employees." Adkins v. United States, 882 F.2d 1078, 1080 (6th Cir. 1989); see also Rev. Rul. 85-44, 1985-1 C.B. 22. Thus Quarles' claim is not exempt from income tax withholding.

FICA and FUTA, like income tax withholding, are based upon wages. Both FICA and FUTA require employers to pay taxes based on wages paid to employees. The definition of "wages" excludes payments "made to, or on behalf of an employee . . . under a plan or system established by an employer which makes provisions for

---

[4]Section 3401(a)(21) makes an explicit exemption for amounts excludable under section 106(b), which pertains to qualified medical savings accounts.

14

his employees . . . on account of . . . medical or hospitalization expenses. . . ." 26 U.S.C. § 3121(a)(2). The relationship between wages for income tax withholding purposes and wages for FICA and FUTA is far from pellucid. In a 1965 Revenue Ruling the IRS held that amounts paid by an employer pursuant to a salary reduction plan were wages under FICA, but exempt from income tax. See Rev. Rul. 65-208, 1965-2 C.B. 383. The United States Supreme Court, however, disapproved this ruling, holding that the term "wages" should be interpreted similarly for purposes of FICA, FUTA, and income-tax withholding. See Rowan Co. v. United States, 452 U.S. 247, 263 (1981). Congress in turn responded by enacting provisions that "decoupled" the interpretation of "wages" under FICA and FUTA from the interpretation of wages for income-tax withholding purposes. The added language provides that "[n]othing in the regulations prescribed for purposes of chapter 24 (relating to income-tax withholding) which provides an exclusion from 'wages' as used in such chapter shall be construed to require a similar exclusion from 'wages' in the regulations prescribed for purposes of this chapter." 26 U.S.C. §§ 3121(a), 3306(b). It is not clear, however, whether the law "permits the IRS to treat a payment as excluded from 'wages' for FICA taxes and not as excluded from 'wages' for income-tax withholding purposes."

15

Express Oil Change, Inc. v. United States, No. CV-95-B-1612-S, 1996 WL 679423, *7 (N.D. Ala. Sept. 30, 1996). Regardless of whether wage exclusions in some cases may be interpreted more liberally for FICA and FUTA purposes than for income-tax withholding, the court finds that it is not appropriate to do so in this case.

The plain language of FICA and FUTA limits the exclusion to payments made under a plan or system. Although instituting a plan may not have been an option in this case, the courts cannot modify a statutory provision simply to avoid an "unfair result." Brief of the Appellant Thomas Quarles at 15. The court finds no reason to distinguish previous cases and revenue rulings that have found payments made directly to an employee in lieu of health benefits are not exempt from income tax. See Adkins, supra, 882 F.2d at 1080; McKean v. United States, 33 Fed. Cl. 535, 539 (1995); Rev. Rul. 85-44, 1985-1 C.B. 22. Furthermore, to the extent that different concerns underlie these systems, these concerns support treating the amount in question as wages. Congress provided an exclusion from employment taxes of amounts paid into plans to counteract employer reluctance to establish such plans. "'The reason for the exclusion was to save employers time and money but what is more important is that it will eliminate any reluctance on the part of the employer to establish

16

such plans due to additional tax cost.'"  <u>New England Baptist</u>

<u>Hosp. v. United States</u>, 807 F.2d 280, 283 (1st Cir. 1986)

(quoting H.R. Rep. No. 76-728, <u>reprinted in</u> 1939-2 C.B. 538,

543).  The so called "decoupling" amendment of 1983 was enacted

by a "Congress . . . looking to solidify the social security

system in the face of serious concerns about its solvency,

concerns that would motivate it to preclude possible claims for

refunds."  <u>Id.</u>  In this case, taxing the amount in question is

consistent with both the 1983 amendment and the intent of the

original exception.


## 4.  Conclusion

For the abovementioned reasons, the bankruptcy court's

decision granting summary judgment to Thomas Quarles is reversed.

The case shall be remanded to the bankruptcy court for further

proceedings consistent with this opinion.

SO ORDERED.


_____
Shane Devine, Senior Judge
United States District Court

September 10, 1998

cc:  Dennis G. Bezanson, Esq.
     Henry J. Riordan, Esq.
     Thomas B.S. Quarles, Jr., Esq.
     George Vannah, Clerk

17