**In re Michael J. KLINGLER, Debtor.**

**Richard P. Day, Plaintiff,**

v.

**Michael J. Klingler, Defendant.**

**Bankruptcy No. 01 B 23460.
Adversary No. 02 A 01197.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 14, 2003.

Joel A. Schechter, Law Offices of Joel A. Schechter, Chicago, IL, Attorney for Michael J. Klingler.

Paul R. Day, Des Plaines, IL, Attorney for Richard P. Day.

### MEMORANDUM OPINION AND ORDER

A. BENJAMIN GOLDGAR, Bankruptcy Judge.

For several years now, plaintiff Richard P. Day has been trying to recover an $1,850 loan he made to debtor Michael J. Klingler. After Klingler's chapter 7 bankruptcy halted Day's collection efforts in state court, Day filed an adversary proceeding (the "first adversary") in the bankruptcy seeking a determination that the debt was nondischargeable. Following trial, the judge to whom the case was then assigned ruled in Day's favor, finding the debt nondischargeable under section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A). Not content with that finding, in this adversary proceeding (the "second adversary") Day wants an order revoking Klingler's discharge under section 727(d) of the Code, 11 U.S.C. § 727(d).

Before the court are the parties' cross-motions for summary judgment on Day's complaint in the second adversary. For the reasons discussed below, the court declines to address the summary judgment motions. The court instead dismisses this adversary proceeding for lack of jurisdiction.

### 1. Background

In April 2000, Michael Klinger induced Richard Day to lend him $1,850 by representing that he held a winning $10,000 "Megabucks" Illinois lottery ticket and promising to repay the loan out of the lottery ticket proceeds. Klingler did not repay the loan.

In February 2001, Day brought an action against Klingler in the Circuit Court of Cook County, Illinois to recover the money. (*See* Klingler Resp. to Day Stmt. of Material Facts, Ex. A). Klingler failed to defend the action, and the circuit court entered a judgment in Day's favor against Klingler. (*Id.*).

Day then tried to collect the judgment by serving a wage deduction summons on Klingler's employer. In its response, the employer disclosed that Klingler participated in a profit sharing plan and that the current balance in Klingler's profit sharing account was $3,322.58. (Complt., Ex. F). The employer added that Klingler participated in a 401(k) plan,[1] that he contributed "8/" to the plan each pay period, and that the current balance in the 401(k) plan was $706.61. (*Id.*).

The employer filed its response with the circuit court on June 27, 2001. (*Id.*) Within a week, Klingler sought protection under chapter 7 of the Bankruptcy Code. In the schedules accompanying his bankruptcy petition, Klingler did not mention any interest in a retirement plan. (Complt.,

---

**1.** Voluntary contributions may be made to retirement plans established under section 401(k) of the Internal Revenue Code. *See* 26 U.S.C. § 401(k).

Ex. C). In amended schedules, Klingler asserted that there were monthly deductions from his earnings for a "pension." Neither the original nor amended schedules revealed that Klingler made voluntary contributions to a section 401(k) plan.

If Klingler meant the omission to be deceptive, Day, for one, was not deceived. In a later motion to annul the automatic stay Day noted Klingler's employer's responses to the wage deduction interrogatories and alleged both that Klingler contributed to a 401(k) plan and that Klingler's profit sharing plan had a balance of $3,322.58. (*See* Ex. to Klingler Stmt. of Material Facts). Day also decided not to request a Rule 2004 examination of Klingler because, Day explained, he "already knew he had been defrauded under 11 U.S.C. § 523." (Day Resp. to Klingler Mtn. for Summary Judgment at 2).

Day commenced his first adversary proceeding on September 4, 2001, filing a complaint objecting to dischargeability of the debt under sections 523(a)(2)(A) and (B) and 727(a). The case was assigned No. 01–00908. After his motion to strike and dismiss a subsequent amended complaint was granted in part and denied in part,[2] Klingler answered, and the parties began discovery.

**2.** The court dismissed Day's section 727(a) claims but declined to dismiss his section 523(a)(2) claims.

**3.** Day's theory was that contributions to pension plans are "mandatory" and so an unavoidable deduction from wages. (Day Mem. in Support of Mtn. for Summary Judgment at 7). Contributions to a section 401(k) plan, in contrast, are voluntary. Day asserts that the amount Klingler claimed as a mandatory deduction was really voluntary and could have been used to repay creditors—including Day. (*Id.* at 8).

**4.** The court takes the complaint as one under section 727(d). The complaint asks to "void

In the interim, the trustee had filed a no-asset report in the underlying bankruptcy case. On October 12, 2001, Klingler received his discharge. Four days later, the bankruptcy case was closed.

Nine months later, Day filed a "motion to reopen defendant's bankruptcy petition [*sic*] for reasons of fraud." Among other things, Day alleged that Klingler had falsely stated in his schedules that he participated in a pension plan when in fact he made voluntary contributions to a section 401(k) plan.[3] (*See* Day Resp. to Klingler Mtn. for Summary Judgement, Ex. A). Day claimed to have learned this just two months earlier when a representative of Klingler's employer testified at a deposition that there was no pension plan and that Klingler participated in a section 401(k) plan. (*See id.*).

For reasons not evident from the record, the then-assigned judge granted Day's motion. The court not only ordered the case reopened but did so "to permit [the] filing of [an] Adversary Complaint to Revoke Discharge." (*See* Order dated July 19, 2002). Day accordingly filed a *second* adversary complaint on August 28, 2002 in which he sought to revoke Klingler's discharge pursuant to section 727(d), 11 U.S.C. § 727(d).[4] The second adversary— *this* adversary—was assigned No. 02– 01197.

Defendant's discharge" pursuant to sections 727(a)(4)(A) and (B), 11 U.S.C. § 727(a)(4)(A), (B). (Complt. at 9). Section 727(a), however, allows the court to bar a debtor's discharge before it has been issued. Section 727(d) is the Code provision permitting revocation of a previously-issued discharge. Here, Klingler had received his discharge, and the court let Day file a complaint to revoke it. (By August 2002, a section 727(a) claim would also have been time-barred. *See* Fed. R. Bankr.P. 4004(a). A section 727(d) claim might not have been. *See* 11 U.S.C. § 727(e)(1).)

Meanwhile, however, the first adversary rolled on. Day filed a motion for judgment on the pleadings that was denied. The matter was set for trial, and trial was held in January 2003. On April 15, 2003, the court issued findings of fact and conclusions of law and entered judgment in Day's favor on his claim under section 523(a)(2)(A), ruling that the state court judgment (plus fees and costs awarded in the action) was "non-dischargeable in bankruptcy." (Final Judgment dated April 15, 2003). Klingler did not appeal.

One month after judgment was entered in the first adversary, Day moved for summary judgment on his complaint in the second adversary. Klingler responded with his own summary judgment motion. The cross-motions are briefed and ready for decision.

### 2. Discussion

 This court cannot reach the merits of summary judgment motions. Because Klingler's debt to Day was ruled nondischargeable in the first adversary, this second adversary is moot and so presents no case or controversy under Article III. There is no jurisdiction here, and action must therefore be dismissed.[5]

 Discussions of bankruptcy jurisdiction typically address 28 U.S.C. § 1334 and its procedural companion, 28 U.S.C. § 157. Easily overlooked is the overarching requirement of Article III of the Constitution restricting the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. Art III, § 2, cl. 1; *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 476 n. 1, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). The limits Article III imposes on federal jurisdiction apply equally to bankruptcy courts. *Kilen v. United States (In re Kilen)*, 129 B.R. 538, 543 (Bankr.N.D.Ill.1991); *In re Interpictures, Inc.*, 86 B.R. 24, 28 (Bankr.E.D.N.Y. 1988).[6]

 To satisfy the case or controversy requirement, the dispute between the parties must be "actual" and "ongoing." Federal courts have no power "to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). When the controversy ceases to be actual or ongoing—"when the issues presented are no longer 'live,' or the parties lack a legally cognizable interest in the outcome," *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (citations omitted)—it is moot. *Honig v. Doe*, 484 U.S. 305, 317, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). At that point, the court loses jurisdiction. *Rice*, 404 U.S. at 246, 92 S.Ct. 402.

 A controversy ceases to exist, and the claim in question becomes moot, if "events outrun the controversy" so that

---

5. This court has the duty to examine its own subject matter jurisdiction, *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986), even where, as here, the parties have not questioned it, *Smith v. American General Life & Accident Ins. Co.*, 337 F.3d 888, 892 (7th Cir.2003). "[N]ot only may the federal courts police subject matter jurisdiction *sua sponte,* they must." *Hay v. Indiana St. Bd. of Tax Comm'rs*, 312 F.3d 876 (7th Cir.2002).

6. This should come as no surprise. The bankruptcy court is a unit of the district court, exercising the district court's bankruptcy jurisdiction. *In re Volpert*, 110 F.3d 494, 499 (7th Cir.1997). Necessarily, then, a bankruptcy court has no broader jurisdiction than the district court itself. *United States v. Amoskeag Bank Shares, Inc. (In re Amoskeag Bank Shares, Inc.)*, 239 B.R. 653, 657 n. 3 (D.N.H.1998)(although not an Article III court, the bankruptcy court cannot hear cases that a district court cannot hear).

the court "can grant no meaningful relief." *McBryde v. Committee to Review Circuit Council Conduct,* 264 F.3d 52, 55 (D.C.Cir. 2001); *see, e.g., Church of Scientology v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992); *In re Vlasek,* 325 F.3d 955, 961 (7th Cir.2003). In particular, a claim is moot when the court can grant no effective relief because the plaintiff has already received all the relief he could. 13A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3533.2 at 238 (1984); *Thomas Sysco Food Servs. v. Martin,* 983 F.2d 60, 62 (6th Cir.1993); *see, e.g., Action on Smoking & Health v. Department of Labor,* 28 F.3d 162, 164 (D.C.Cir.1994).

 The judgment in Day's favor in the first adversary rendered the second adversary moot. The injury for which Day sought relief in the first adversary was the potential discharge of Klingler's debt to him under section 727(b). The judgment he received in the first adversary gave him the relief he sought: the court specifically held that the debt (or, more accurately, the state court judgment to which the debt had been reduced) was "non-dischargeable in bankruptcy." (Final Judgment dated April 15, 2003). With that remedy, Day received all the relief to which he was entitled for the injury he claimed. The debt cannot be made any more nondischargeable than it currently is. There is no further relief the court can grant him.

It is true (as Day would doubtless point out if given the chance) that section 727(d) provides a broader remedy—and so a different one—than section 523(a). Section 523(a) is addressed to the dischargeability of a specific debt, not all debts. *Austin*

*Farm Ctr., Inc. v. Harrison (In re Harrison),* 71 B.R. 457, 459 (Bankr.D.Minn. 1987). The revocation of discharge under section 727(d), on the other hand, like the denial of discharge under section 727(a), "is total, causing all creditors to continue to have a post-petition claim against the debtor and his present and future assets." *Coggin v. Coggin (In re Coggin),* 30 F.3d 1443, 1452 (11th Cir.1994) (discussing section 727(a)); *see also Miller v. Bauer (In re Bauer),* 290 B.R. 568, 579 (Bankr. S.D.Ohio 2003) (denial of discharge is "the more comprehensive remedy").

But this difference—and it is the only difference—is immaterial here. As a result of the first adversary, the debt Klingler owes Day will not be discharged. Having prevailed in that proceeding, Day no longer has any personal stake in any other discharge decision. He stands to gain nothing in the second adversary if he prevails.[7] At most, he is litigating now to vindicate the rights of any remaining creditors, which he cannot do. *Powers v. Ohio,* 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (plaintiff in federal court "must assert his or her own legal rights and interests, and cannot rest a claim for relief on the legal rights or interests of third parties"). Or else he is simply litigating out of distaste for Klingler, which he also cannot do. *Foster v. Center Twp. of LaPorte County,* 798 F.2d 237, 244 (7th Cir.1986) (mere indignation at the defendant or disapproval of his conduct will not create a case or controversy).

Because Day received in the first adversary all the relief he was entitled to obtain in the second, there is no further relief the court can grant him, and the second adversary proceeding is moot.[8] Mootness is

---

7. The debt would be dischargeable in a subsequent chapter 13 case, for example, whether Klingler had prevailed in the current chapter 7 case on his objection under section

523(a)(2) or on his section 727(d) objection. *See* 11 U.S.C. § 1328(a).

8. Alternatively, Day might be viewed as having lost standing to pursue the second adver-

jurisdictional. *Rice,* 404 U.S. at 246, 92 S.Ct. 402. If a case becomes moot, a federal court loses jurisdiction. *Walters v. Edgar,* 163 F.3d 430, 432 (7th Cir.1998). The court accordingly lacks jurisdiction over this adversary proceeding. The proceeding must be dismissed.

### 3. Conclusion

This adversary proceeding is dismissed for lack of jurisdiction.

sary. *See Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (noting that mootness is often described as "the doctrine of standing set in a time frame") (internal quotation omitted); 13 C. Wright, et al., *supra,* § 3529 at 279 (commenting that the same justiciability concerns are often expressed by different doctrines). To have standing, a plaintiff must have suffered, or at least be threatened with, an "injury in fact" that is "distinct and palpable." *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717,

109 L.Ed.2d 135 (1990) (internal quotations omitted). Moreover, a plaintiff must have standing at every stage of the litigation. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Once the first adversary was decided, Day lost standing in the second adversary because the only injury that conferred standing—the prospect that Klingler's debt to him would be discharged and so could never be collected—was redressed. For the same reason the second adversary is moot, then, Day has no standing to maintain it.